[Civ. No. 251.   Third Appellate District.—March 27, 1907.]

WILLIAM H. HEALEY, and ROBERT TIBBITTS, Co-partners, etc., Respondents, v. ANGLO-CALIFORNIAN BANK, LIMITED, and the Managers Thereof, and MODESTO IRRIGATION DISTRICT, and the Board of Directors and President Thereof, Appellants.

IRRIGATION DISTRICT—PROPOSED BID FOR WORK—CERTIFIED CHECK—FORFEITURE—INJUNCTION—FINDINGS AGAINST EVIDENCE—INVALID PROCEEDING—SUPPORT OF JUDGMENT.—In an action to restrain the managers of defendant bank from paying a certified check, indorsed ''not to be paid unless forfeited,'' which was delivered to the irrigation district defendant, with a sealed bid for proposed work on its canal system, the check to be returned if the bid was not accepted, and forfeited if the bid was accepted, and not complied with by plaintiff, where issue was joined as to the acceptance of the bid and noncompliance therewith by the plaintiff, and the court found against evidence as matter of fact that the averments of the complaint were true, and the denials and averments of the answer were untrue, a judgment for the plaintiffs can only be supported upon the theory that the court found, as matter of law, that the whole proceeding was invalid, and that the attempted acceptance and award were nugatory.

ID.—FAILURE OF OFFICERS OF DISTRICT TO COMPLY WITH ESSENTIAL PROCEEDINGS—VOID CONTRACT—BIDDER NOT ESTOPPED.—Where the officers of the irrigation district, which is a public municipal corporation, have dispensed or failed to comply with any of the essential proceedings prescribed by statute for investing them with power to contract, no liability is imposed upon the corporation by the

contract, and the bidder, whose offer is a mere naked one, without consideration, is not estopped, by reason of his failure to comply therewith, from claiming the return of the check deposited with his bid, or from enjoining the payment thereof.

ID.—ADVERTISEMENT OF LESS THAN WHOLE WORK—OMISSIONS IN DESCRIPTION—INSUFFICIENT NOTICE.—Where the advertisement under section 53 of the Wright Act was for less than the whole work, it is essential that the notice must describe the particular work to be done, as required in that section, so as to correspond with the plans and specifications thereof, which must relate to the same work, so as not to mislead bidders to their disadvantage, and the failure properly to describe the work rendered the notice insufficient.

ID.—UNCERTAINTIES AFFECTING COMPETITION IN BIDDING.—Any uncertainties affecting competition in bidding, either as to the substantial terms of the proposed contract, or a substantial variance as to such terms between the notice to bidders and the plans and specifications, or in the plans and specifications, or as to the reserved power of the engineer to change the plans and require extra work without providing for compensation, rendered the whole proceedings invalid.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

W. H. Hatton, and L. L. Dennett, for Appellants.

Alex. G. Eells, for Respondents.

CHIPMAN, P. J.—Plaintiffs allege in their complaint that on November 29, 1902, they caused to be delivered to defendant irrigation district a sealed proposal in writing to do certain work for it upon its canal system, and accompanying said proposal, placed in the possession of said defendant irrigation district their check for $6,000, upon the face of which check was written "Not to be cashed unless forfeited"; that said check was certified by said defendant bank and was so delivered under an express agreement between said defendant irrigation district and plaintiff, that "if said proposal were not by said Modesto Irrigation District accepted, said check should be returned to plaintiffs"; that said proposal was

never accepted by defendant district nor was it ever in fact forfeited to said district; that "notwithstanding the premises, the defendants Modesto Irrigation District and F. C. Davis, as its President as aforesaid, threatens to collect the amount of said check . . . and will do so unless prevented by the injunction of this Court, to the great and irreparable injury of these plaintiffs. And the said defendant Anglo-Californian Bank . . . and the managers as aforesaid threaten to cash and pay the amount of said check . . . to said defendant Modesto Irrigation District . . . and will do so unless prevented," etc. An injunction is prayed for and also that defendant district be directed to surrender said check to plaintiffs.

The defendant bank made default. Defendant district, answering the complaint, alleged that on November 5, 1902, defendant gave notice by publication, as required by law, calling for bids for constructing a certain portion of the irrigation work of said district, a copy of which said notice is made part of the answer; among other things, said notice set forth the following, to wit: "Sealed proposals will be received . . . on the 29th day of November, 1902, for the construction of bridges, drops, railroad crossings, and headgates, hereafter particularly described, and according to the plans and specifications of said work and instructions to bidders, which can be seen at the office of said Board. The contract will be let to the lowest, responsible bidders, but the Board may reject any or all bids. The proposals must be in writing and signed by the bidder and must be upon forms furnished by the Board, with blanks properly filled out, and be enclosed in a sealed envelope. . . . Said proposals must be accompanied by a certified check . . . and if such bid is accepted, and the contract awarded to such bidder, and he fails to enter into such contract and to furnish such bond, then his check and the moneys payable thereon, shall be and remain the property of said District. . . . Any person to whom a contract shall be awarded shall, within ten days' notice of such award, make, execute and deliver to said Board a written contract, in form satisfactory to said Board, for the performance of said work, at the time to be specified, in the manner according to and upon the terms prescribed by this notice, such proposal, and said plans and specifications. . . .

"Said work is particularly described as follows:

"The construction of the drops, headgates, bridges and railroad crossings within the boundaries and said irrigation district according to the plans as aforesaid.

"Said bids should specify the price per thousand of lumber, the price of concrete per cubic yard, and of syphon pipe per foot, all in place.

"The work will comprise about 75 drops, 34 bridges, 8 railroad crossings, and 5 headgates.

"Full details of the requirements can be obtained from the said plans and specifications on file at the office of the said Board of Directors."

It is further averred that on November 29, 1902, the several bids or proposals were opened by defendant and plaintiffs presented and delivered to said defendant a bid in writing for the construction of the work advertised in said notice, "which said bid was accompanied by a certified check hereinbefore mentioned, which said certified check is for the amount required in said notice"; that defendant "duly accepted the said bid or proposal in writing of said plaintiffs . . . and awarded the said plaintiffs the contract for the construction of such portion of irrigation work of said district as was set forth in said bid or proposal in writing of said plaintiffs, and thereafter duly notified said plaintiffs of the said acceptance of their said bid, and of the awarding to plaintiffs of said contract"; that by said bid plaintiffs agreed that if not accepted and said contract awarded to them, and in case there was any default on the part of plaintiffs in executing the contract and bond required by said notice, the said check and the money payable thereon should be and remain the property of said district; that plaintiffs have failed and refused to enter into such contract and to furnish the required bond.

The court found "that each and all the facts alleged in the complaint of plaintiffs herein are true as alleged," and "that all the denials in the answer of defendants as appearing are untrue." The court also found "that it is not a fact that said board of directors . . . duly or at all accepted said bid or proposal of plaintiffs. That it is not a fact that said board ever duly or at all awarded to plaintiffs the contract mentioned in said answer, nor any other contract." As conclusion of law, the court found that plaintiffs are entitled to judgment as prayed for, and judgment was accordingly entered. De-

fendants appeal from the judgment, and from the order denying their motion for a new trial.

The findings are challenged as unsupported by the evidence, and, in point of fact, rightly so. The evidence is undisputed that plaintiffs submitted a bid pursuant to the proposals of defendants and put up their certified check as there required, and that the bid of plaintiffs was accepted by defendants and plaintiffs notified thereof, but that plaintiffs refused to proceed further in the matter. The findings and judgment can be sustained only upon the proposition advanced by plaintiffs "that the court found that, in contemplation of law, the whole proceeding was null and void, and the attempted acceptance and award simply nugatory," as, it is claimed, "was the case in *Perine Co.* v. *Pasadena,* 116 Cal. 6, [47 Pac. 777]." The argument is that appellant is a public municipal corporation, and its officers are public officers (*In re Madera Irr. Dist.,* 92 Cal. 297, 319, 323, [27 Am. St. Rep. 106, 28 Pac. 272]; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 174, [17 Sup. Ct. Rep. 56]); and that "if any of the essential proceedings prescribed by the statute for investing the officers of such a corporation with power to contract be dispensed with, no liability is upon the corporation, by reason of such a contract"; citing *Forest* v. *Levee Ditch,* 77 Fed. 555; *City* v. *Morgan,* 65 Ohio St. 219, [62 N. E. 127].

Admittedly, the power given the defendants is found in section 53 of the so-called Wright act (Stats. 1897, pp. 254, 272). Section 53 is as follows: "After adopting a plan for such canal or canals, storage reservoirs and works as in this act provided for, the board of directors shall give notice, by publication thereof . . . calling for bids for the construction of the work, or of any portion thereof; if less than the whole of the work is advertised, then the portion so advertised must be particularly described in such notice. Said notice shall set forth that plans and specifications can be seen at the office of the board, and that the board will receive sealed proposals therefor, and that the contract will be let to the lowest responsible bidder; . . . and as soon as convenient thereafter the board shall let said work, either in portions, or as a whole, to the lowest responsible bidder; or they may reject any or all bids and readvertise for proposals, or may proceed to construct the work under their own superintendence."

In *Perine Co.* v. *Pasadena,* 116 Cal. 6, [47 Pac. 777], a contractor bid for certain work under the street law, and, as required by that law, accompanied his bid by a check subject to forfeiture in case he refused or neglected to enter into a contract if his bid was accepted. He was awarded the contract, but refused to proceed further and brought suit to recover his deposit. It was held that the street law contemplates forfeiture for a failure to enter into a contract based upon legal proceedings of the municipal authorities, but if they are illegal the provision of the contract relating to a deposit is a naked offer without consideration and the bidder is not estopped thereby. It was held also that a discretion lodged in the board of supervisors alone could not be delegated to the superintendent or city surveyor; and, where the specifications of a contemplated street improvement leave it to them to designate what extra concrete shall be put in, thus giving them power to increase the price indefinitely to be paid by the property owner without his having the means of knowing the ultimate cost of the finished work, the proceedings for the improvement are rendered invalid.

Respondents contend that the notice of proposals is jurisdictional by analogy to the notice of intention in the case of street work under the street law, and that the description of the proposed work must be at least as certain as is required under the street law; and, as held in *Patridge* v. *Lucas,* 99 Cal. 521, [33 Pac. 1082], it must enumerate the different classes of work and enumerate them correctly; and it must, by definite and certain references to specifications, put intending bidders in a position to ascertain definitely what is intended to be required of them.

Appellants contend that there is a wide difference between the object of the notice of intention in the street law and the advertisement or notice for bids in the Wright irrigation law; that the only object of the advertisement is to give notice to intending bidders and does not concern owners of irrigated land in the district. Furthermore, it is claimed that the notice is in no sense jurisdictional, but that the adoption of the plans is the source of the jurisdiction to be exercised.

It is, perhaps, not necessary to decide just how far in all cases the advertisement for bids is jurisdictional or how closely the analogy may be drawn between the notices referred to in the two acts. This much, however, we think may be safely af-

firmed: That while section 53 of the Wright act provides for calling for bids for *the entire work* "after adopting a plan," and does not require in terms that in such case the work shall be particularly described, the act does specifically provide that *"if less than the whole work* is advertised (which is the case here), then the portion so advertised must be particularly described in such notice." It will be observed that the statute requires that the notice shall set forth that the plans and specifications can be seen at the office of the board, "and that the board will receive sealed proposals therefor, and that the contract will be let to the lowest responsible bidder . . . and thereafter the board shall let *said work."* Clearly, the act contemplates that the work "particularly described in such notice" must agree substantially with the work described in the plans and specifications and must relate to the same work, otherwise the bidders might be misled to their disadvantage by reason of doubts as to which of the two descriptions of the work should be followed.

Whether there be uncertainty in the specifications as to the substantial terms of the proposed contract or a substantial variance as to such terms between the notice to bidders and the plans and specifications, the result would be the same, as is set forth in *Packard* v. *Hayes,* 94 Md. 233, [51 Atl. 34], where the court said:

"Necessarily, then, all the essentials that the municipality designs that the contract proposed to be made shall contain is to be determined before proposals are invited, and are to be placed before the bidder as the basis of his bid; otherwise there would be no standard by which bidding could be made with the definiteness and precision which would leave nothing to be done except to ascertain the lowest bid. And it may be said there could be no effective competition in bidding, which it was the evident design of the provisions of the charter we are considering to secure. That proposals for contracts under these provisions should be made by bidders with knowledge of and with reference to all the essential elements of the contract into which they are invited to enter is enforced by other considerations.

"The object of the provisions of the municipal charter we are considering is to prevent favoritism and extravagance in the making of municipal contracts. The effect of those provisions to produce the result intended would be greatly im-

paired, and the purpose of them might be entirely defeated, if the method of awarding contracts under them which was pursued in this case could be sustained. The absence of any definite and precise basis for competition among the bidders, the allowing of each bidder to submit his own independent proposition as to what would form an important element of the contract, and the reservation of a discretion to be exercised by a municipal authority as to an essential of the contract after bids had been submitted, make the contract here the subject of controversy violative of the intent and purpose of the provisions of law in question, as well as of the essential character of competitive bidding.'' (See, also, *Fones Bros. Hardware Co.* v. *Erb,* 54 Ark. 645, [17 S. W. 7].)

In *Fones Bros. Hardware Co.* v. *Erb,* the court stated certain principles deemed to be indispensable to competitive bidding: 1. An offering to the public; 2. Opportunity for competition; 3. Basis for exact comparison of bids, i. e., ''bidding for the same particular thing to be done according to the same specifications.''

It is immaterial that fraud be shown. It is the opportunity for fraud or favoritism that is forbidden. (*Bolton* v. *Gilleran,* 105 Cal. 244, 252, [45 Am. St. Rep. 33, 38 Pac. 881].)

What, then, do the facts show? The notice reads: ''Said work is particularly described as follows: The construction of the drops, headgates, bridges and railroad crossings . . . according to the plans aforesaid.'' The plans and specifications included ''flumes,'' ''trestles'' and ''chutes'' not mentioned in the notice. The notice called for certain railroad crossings, but the plans showed no such crossings. As to these crossings, it is explained that after the notice was published and before the bids were submitted the bidders were told not to include the railroad crossings in their bids, and plaintiffs did not, in fact, include them in their bid, although one bidder did include them in his offer. The notice speaks of concrete and syphon pipe, no details of which are mentioned in the specifications, nor did the form of bid furnished by defendants provide for them, although one of the bidders included these items in his bid. The drops were the most expensive part of the work, but the plans showed only what was called a ''typical drop.'' This showed the manner of construction, but gave no suggestion as to the amount of ex-

cavation in the seventy-three required or of the nature of the land or its contour where the drops were to be placed. There was a profile of the work, but it was not referred to in the notice as part of the plans and was not furnished with the "set" furnished for plaintiffs' examination. Attention is called also to the omission in the notice to state any time within which the work was to be performed. The notice read "at the time to be specified." The specifications required the successful bidder to execute the contract within ten days from acceptance of his proposal and called for prompt and vigorous work to "the time fixed for the completion of the contract," subject to certain penalties, but nowhere is this time stated. Apparently the time of completion was left entirely discretionary with defendants, and might have been so fixed as to greatly increase the bidders' burdens. It has been held that the time for completing the work should have been stated in the notice. (*Kneeland* v. *Furlong*, 20 Wis. 437; *Manley B. Co.* v. *Newton*, 114 Ga. 245, [40 S. E. 277].) It was not stated either in the notice or plans.

The notice stated that the bids should specify the price of certain materials, to wit, concrete and syphon pipe, all in place, but the form of bid furnished by defendants, as already noticed, omitted mention of these materials, from which it appears that the bids were not permitted to include the work advertised for. *Andrews* v. *Board*, 7 Idaho, 453, [63 Pac. 593], is cited, where the court held that where proposals for a two-span, five hundred-foot bridge were called for and a three-span bridge, less than five hundred feet long, was let under the call, the bidding was not competitive. The bid admittedly refers to the notice as well as to the plans and is an offer to construct all the work advertised, including, as we have seen, work which was omitted from the plans. To say the least of these provisions, it is scarcely possible to determine whether the contract should be confined to the work mentioned in the notice, or the proposals or the plans. (*Packard* v. *Hayes*, 94 Md. 233, [51 Atl. 32, 34].)

Attention is also invited to certain uncertainties in the specifications. Some principles governing in such case have already been adverted to. There being no time fixed for completion of the work opened a wide door for favoritism and precluded the probability, if not the possibility, of a letting to the lowest responsible bidder. It is irreconcilable with fair

dealing to leave it in the power of defendants to fix a time different for a favored bidder from that fixed for one not favored, which might be done in advance of the bidding. It is no answer, as appellants contend, that we must not presume that the officers of the district will violate law. It is not a question of presumption of official honesty and integrity, but a question of opportunity to do wrong that the law guards against. (*Bolton* v. *Gilleran,* 105 Cal. 244, [45 Am. St. Rep. 33, 38 Pac. 881].)

Turning to specifications numbered 16 and 17, we find an irreconcilable conflict. In 16, provision is made for a change of work from that described in the specifications, but "no material change shall be made unless first agreed on in writing by the board and contractors." In 17, the unqualified right is retained in the district "to change at any time during the progress of the work, the alignment, grades and width of the canal or any part thereof, and also the limits of all sections; or alter the character, vary the dimensions or change of location of structures, or substitute one kind of work or material for another (and many other like powers) . . . without the contract price being thereby affected unless the aggregate value of all work contemplated by the contract be changed fully twenty (20) per cent, in which case a fair allowance either to the district or contractor shall be made (not by the district but) by the engineer." The contractor, however, may "throw up said contract," and the district "may settle with the contractor on the measure of damages he may suffer." Probably these contradictory provisions crept in through an inadvertent commingling of the form of specifications for the entire work with specifications for a part of the whole work. However this may be, the provisions stand unexplained, under which it is hard to conceive how a bidder could safely enter into a contract.

It is also provided in the specifications that "bidders may also submit their own plans and specifications for the whole or any portion thereof," etc. This provision probably came from the form to be used where the whole work under a general plan, or some part of it, was to be bid for, but it is used here and is not explained. In the case of *Ertle* v. *Leary,* 114 Cal. 238, [46 Pac. 1], it was held that where the law required the contract to be let to the lowest bidder upon plans previously adopted by the board of supervisors, there

is no authority to let a contract upon plans to be submitted by the bidders, thereby preventing competition in the bidding and giving the board an opportunity for favoritism.

In the specifications for "drops" the right was reserved to the engineer "to modify or change the detail of construction." Like reservation was provided as to headgates "and no extra expense allowed for the same." (*Bolton* v. *Gilleran*, 105 Cal. 244, [45 Am. St. Rep. 33, 38 Pac. 881]; *Perine Co.* v. *Pasadena*, 116 Cal. 6, [47 Pac. 777]; *Chase* v. *Scheerer*, 136 Cal. 248, [68 Pac. 768]; *Packard* v. *Hayes*, 94 Md. 233, [51 Atl. 34].)

In view of the foregoing facts, we think the conclusion of law arrived at by the trial court was correct. The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.