[Sac. No. 2935.   In Bank.—June 15, 1921.]

TURLOCK IRRIGATION DISTRICT (a Public Corporation), Respondent, v. JAMES G. WHITE, Tax Collector, etc., et al., Appellants.

[1] TAXATION—LANDS OF MUNICIPAL CORPORATIONS OUTSIDE CORPORATE BOUNDARIES—EXCEPTION FROM EXEMPTION—INAPPLICABILITY OF CONSTITUTIONAL AMENDMENT TO IRRIGATION DISTRICTS.—An irrigation district organized under the laws of the state is not a municipal corporation within the meaning of such term as used in the amendment of 1914 to section 1 of article XIII of the constitution, which excepts from exemption for taxation such lands and improvements belonging to a municipal corporation located outside of the municipality as were subject to taxation at the time of their acquisition.

[2] IRRIGATION DISTRICT—NATURE OF.—An irrigation district is not a municipal corporation, but a public corporation for municipal purposes.

[3] TAXATION—EXEMPTION OF IRRIGATION DISTRICTS PRIOR TO CONSTITUTIONAL AMENDMENT—PROPERTY OF THE STATE.—Under section 1 of article XIII of the constitution before its amendment in 1914, irrigation districts were exempted from taxation under the express exemption of the property of the state, and not under the special exemption of property of municipal corporations.

APPEAL from a judgment of the Superior Court of Tuolumne County.   G. W. Nicol, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Rowan Hardin for Appellants.

P. H. Griffin and Griffin, Boone & Boone for Respondent.

THE COURT.—This appeal is by defendants from a judgment enjoining them from attempting to collect certain taxes levied by the defendant county against lands of the plaintiff.

The plaintiff, an irrigation district, whose corporate boundaries are wholly within the counties of Merced and Stanislaus, is the owner of land situated in the county of Tuolumne. It is the taxation of this land by the county of Tuolumne that is sought to be enjoined.

Authority to levy and collect such tax is claimed by the defendant county under the amendment of 1914 to section 1 of article XIII of the state constitution. As this section of the constitution previously stood, it provided that no property belonging to the "United States, this state, or to any county or municipal corporation within this state" shall be subject to taxation. The amendment excepts from such exemption "such lands and the improvements thereon located outside of the county, city and county, or municipal corporation owning same as were subject to taxation at the time of the acquisition of the same by said county, city and county, or municipal corporation."

The entire controversy in this case is as to whether or not an irrigation district, organized under the laws of California, is a "municipal corporation" within the meaning of this section of the constitution.

This amendment to the constitution (article XIII, section 1) was submitted by the legislature to the people in November, 1914. A printed argument in favor of its adoption accompanied the publication of the proposed amendment, a copy of such argument being mailed to each voter in the state as required by law. (Pol. Code, secs. 1195, 1195a, 1195b.) This argument in favor of the proposed amendment clearly explains its purpose, and the voters in acting upon the amendment must be deemed to have considered such reasons in interpreting the general term "municipal corporation" used in the proposed amendment. The argument, in part, was as follows:

" . . . This amendment does not seek to hinder in any way the development of enterprises by and for the benefit of counties or municipalities, in any part of the state, but to protect from loss those counties into which they may enter for such purposes. A concrete illustration is afforded by the counties of Tuolumne, Mono, and Inyo. In furtherance of obtaining a large water supply, for municipal and other uses, the purchase by San Francisco in Tuolumne County aggregated over one million dollars' worth of property. Los Angeles, in Owens River valley, acquired by purchase over seventy-five thousand acres of land, amounting to over one-sixth of the assessed value, and more than one-fourth of the located agricultural land of the county. The city of Los Angeles has acquired large holdings in Mono County. Be-

fore such acquisition the area was taxpaying property. Since the acquisition in Inyo County the city of Los Angeles has continued to pay taxes, as a matter of justice, but its payments are accompanied by protests, in order to preserve to it the right of refusal to pay which many contend that it has under the constitutional provision as it stands at present, and that it might sustain in case of legal contest. While not abandoning any right from a technical standpoint, the city recognizes the justice of the contention upon which this amendment is based.

"The city of San Francisco refuses absolutely to pay one dollar in taxes in Tuolumne County on their one million dollars' worth of property, contending they are exempt from such a tax by a constitutional provision. . . .

"It would be possible for an acquiring city or county to virtually destroy the government of a small county by acquiring, for one purpose or another, for municipal use, the substance of its revenue-yielding property. That such a result would be improbable and extreme does not alter the fact of its possibility. In the Inyo county instance, refusal by the city of Los Angeles to pay taxes upon real estate which has heretofore borne its due share of the expense of the county government would be a serious matter, either curtailing the county's welfare or imposing a heavier burden on other property. With such a result possible to a fractional extent, it would be equally possible to the fullest extent that the investing city might see fit to go.

"It is to remedy such a condition that this amendment was proposed. Uncertainty on the matter should be removed by a legal assurance that while natural resources within one county may be directly used for the upbuilding of another, lands or other property already upon the invaded county's tax-roll shall continue to bear its share of maintaining the local government.

"It is hoped, therefore, that the justice of this amendment will insure for it the approval of the people of the state."

It is apparent that the term "municipal corporation" was thus presented to the people as synonymous with such corporations as Los Angeles and San Francisco, that is to say, as municipal corporations in the strict technical sense.

In their brief appellants say: "To start with it will be admitted that by the late decisions of the supreme court said decisions have by an exceedingly fine analysis, determined that, as a technical legal proposition, an irrigation district is an arm of the state government or a public corporation and not a municipal corporation as the term municipal, corporation is technically known." However, appellants' contention is that the term "municipal corporation," in its popular acceptation, includes irrigation district and consequently this popular meaning is to be applied rather than a technical one. The rule appellants rely on is thus stated in a recent case (*City of Pasadena* v. *Railroad Commission,* 183 Cal. 526, [10 A. L. R. 1425, 192 Pac. 25]): " . . . The constitution, 'unlike the acts of our legislature, owes its whole force and authority to its ratification by the people; and they judged of it by the meaning apparrent on its face according to the general use of the words employed, where they do not appear to have been used in a legal or technical sense.' (*Miller* v. *Dunn,* 72 Cal. 465, [1 Am. St. Rep. 67, 14 Pac. 27, 28].) Where a word has a popular and also a technical meaning, 'the courts will accord to it its popular meaning, unless the very nature of the subject indicates or the context suggests that it is employed in its technical sense.' (*Weill* v. *Kenfield,* 54 Cal. 113.)" Other instances of its application may be found in *Miller* v. *Dunn,* 72 Cal. 462–465, [1 Am. St. Rep. 67, 14 Pac. 27]; *Towle* v. *Matheus,* 130 Cal. 574–577, [62 Pac. 1064]; *San Pedro etc. R. Co.* v. *Hamilton,* 161 Cal. 610–617, [37 L. R. A. (N. S.) 686, 119 Pac. 1073]; *Perrin* v. *Miller,* 35 Cal. App. 129–132, [169 Pac. 426].

In support of the proposition that the term "municipal corporation" as commonly understood includes an irrigation district, the following quotation from *Merchants' Bank* v. *Escondido Irr. Dist.,* 144 Cal. 329, [77 Pac. 937], is cited: " . . . but the term *municipal,* as commonly used, is appropriately applied to all corporations exercising governmental functions, either general or special; and, indeed, this must be taken as the definition of a *public* or *municipal corporation.*" Appellants also cite the following from *In re Madera Irr. Dist.,* 92 Cal. 296, 319, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 277]: "The municipal corporations which may be thus created are not limited to cities and towns. The

constitution makes provision in various places for municipal corporations, other than cities and towns (article XI, sections 9, 10, 12, 16). In each of these sections provision is made with reference to the government or officers of 'county, city, town, or other public or municipal corporation,' thus clearly indicating that there may be municipal corporations other than those of a town or city."

[1] The fact that the argument submitted to the voters indicated that the term "municipal corporation" was used with technical accuracy requires that the rule relied upon by appellants be applied against them rather than in favor of their contention, because the very nature of the subject, the context of the amendment, and the manner and reason for its presentation all require that it be construed in its technical sense, and hence, it is within the exception of the rule of construction above stated. There are, however, other cogent reasons for concluding that an irrigation district is not included within the term "municipal corporation" as used in the amendment. [2] The nature of an irrigation district has been a matter of judicial investigation and interpretation, and it has been held that such a corporation is not a municipal corporation, but a "public corporation for municipal purposes." (*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, [41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes].) As to swamp-land, drainage, levee, and reclamation districts, similar to irrigation districts, it has been held that they were not municipal corporations. (*People* v. *Levee Dist. No. 6,* 131 Cal. 30, [63 Pac. 676]; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, [103 Pac. 207]; *Swamp Land Dist. No. 150* v. *Silver,* 98 Cal. 51, [32 Pac. 866]; and *Reclamation Dist. No. 70* v. *Sherman,* 11 Cal. App. 399, [105 Pac. 277]. See, also, *People* v. *Selma Irr. Dist.,* 98 Cal. 206, 208, [32 Pac. 1047], and cases there cited.) The amendment in question must be considered to have been framed and submitted to the people with these decisions in mind, by which it was settled that such corporations were not "municipal corporations."

It is worthy of note that at the very election at which this constitutional amendment was adopted several amendments were submitted in which the term "irrigation district" was used. For illustration, section 13, article XI, was amended to prohibit the legislature from interfering with any county,

city, town, or municipal improvement, etc., "except that the legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state." Article XI, section 13½, was amended to include "irrigation district" in the phrase "county, city and county, city, town, *municipality*, or other public corporation," so that the phrase now reads: "Any county, city and county, city, town, *municipality*, irrigation district or other public corporation," etc., thus tending to impress upon the voter that the term "municipality" did not include an "irrigation district."

At the same election article XI, section 6, was amended by the people. This section restricts the power of the legislature in the formation of municipal corporations, to providing by general law for their formation, and prohibits the formation of such corporations by special statute. That section uses the term "municipal corporation" as synonymous with "cities and towns." The section reads, in part, as follows: "Sec. 6. Corporations for municipal purposes shall not be created by special laws, but the legislature shall by general laws provide for the incorporation, organization and classification, in proportion to population, of cities and towns . . . "

If it were intended by the legislature and by the people to use the term "municipal corporation" with its broadest possible meaning in article XIII, section 1, *supra*, it is reasonable to suppose that language similar to that contained in article XI, section 13½, *supra*, would have been employed, expressly including, as does the latter section, the term "irrigation districts."

One of the important rules of constitutional construction is thus stated by Mr. Cooley: "If a difficulty really exists, which an examination of every part of the instrument does not enable us to remove, there are certain extrinsic aids which may be resorted to, and which are more or less satisfactory in the light they afford. Among these aids is a contemplation of *the object to be accomplished or the mischief to be remedied or guarded against* by the clause in which the ambiguity is met with." (Cooley's Constitutional Limitations, p. 100. [Italics the author's.])

In view of the general policy of the law and the great necessity on which that policy rests, that property held by public corporations shall not be taxed by the state, much less by other public corporations, and the plain fact that this particular amendment of the constitution was manifestly inspired by the desires of three counties to prevent Los Angeles and San Francisco from escaping taxation on property owned by them situated outside their limits for the carrying on of public water systems, together with the further fact that the constitution itself in other parts thereof describes "municipal corporations" and provides for their creation in such a way that it cannot be doubted that none other than the ordinary municipal corporations were referred to, it is clear that irrigation districts were not made taxable by the exception contained in the amendment in question.

[3] It should be stated that it is conceded that irrigation districts were not taxable before the amendment of 1914, and are not now, unless such taxation is authorized by the amendment, but it is contended that they then were exempt because of the special exemption of the property of "municipal corporations" contained in such section, and that such irrigation districts are now taxable under the special exception in the amendment authorizing the taxation of "municipal corporations." To the contrary, such exemption existed because of the express exemption of the property of *"the state,"* contained in that section and because of the implications in favor of the exemption of public property. (See *Reclamation Dist. No. 551* v. *County of Sacramento,* 134 Cal. 477, [66 Pac. 668], and cases therein cited for a discussion of the principle applicable. See, also, *Webster* v. *Board of Regents,* 163 Cal. 705, [126 Pac. 974], and cases cited.) Reference may also be made to *Central Irr. Dist.* v. *De Lappe,* 79 Cal. 351, [21 Pac. 825], and *Lindsay-Strathmore Irr. Dist.* v. *Superior Court,* 182 Cal. 315, [187 Pac. 1056], for a discussion of the similarity of the organization of reclamation and irrigation districts.

The language quoted in the dissenting opinion from *Southern Pacific Co.* v. *Levee Dist. No. 1,* 172 Cal. 345, [156 Pac. 502], read in the light of the express statement in the opinion that such districts are not "municipal corporations," would indicate that the court considered that the property of the district was "state property" rather than property of a

"municipal corporation." The same view is taken in *People v. Reclamation Dist. No. 551*, 117 Cal. 114, [48 Pac. 1016], where it is said: "Certainly these districts were not municipal corporations, as that term is used in the constitution . . . If these districts can be said to be corporations at all, I think they are properly called public corporations for municipal purposes. That phrase means no more than that they are state organizations for state purposes. They are certainly not municipal corporations in the strict sense." Similarly in *Re Madera Irr. Dist.*, 92 Cal. 296, 322, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 278], it was said: "The property held by the corporation is in trust for the public, and subject to the control of the state."

However, the reasons presented for the conclusion reached in *Southern Pacific Co. v. Levee Dist. No. 1*, 172 Cal. 345, [156 Pac. 502], were so numerous and cogent that the differentiation between the various forms of taxing agencies was of little, if any, weight in arriving at the conclusion that it was intended by the amendment to prohibit all such agencies from exercising the taxing power over railroad corporations, that the decision is of little or no assistance in reaching a conclusion on the question involved here.

Judgment affirmed.

Wilbur, J., Angellotti, C. J., Shaw, J., Olney, J., Lennon, J., and Lawlor, J., concurred.

SLOANE, J., Dissenting.—I dissent. The reasoning of the majority opinion that this constitutional provision should be strictly interpreted against the tax in question because all intendments of the law are against the taxation of public property cannot apply in this instance, because here the provision involved is avowedly dealing with the taxation of public property.

Section 1 of article XIII expressly defines what classes of public property shall be exempt from taxation. It discloses, first, "that all property in the state except as otherwise in this constitution provided, not exempt under the laws of the United States, shall be taxed." Standing alone, under the rule cited, this might not include public property, exempt under the general rule of public policy, but the section proceeds with a proviso which shows

that it is dealing with the subject of taxation as applied to both public and private property.

The proviso is, that various enumerated classes of property, including "such as may belong to the United States, this state, or any county, city and county, or municipal corporation within this state, shall be exempt from taxation."

It is entirely clear that unless the property of an irrigation district is either the property of the state or of a municipal corporation, it is not exempt from taxation at all. When the legislature or constitution has made express provision for the exemption of certain classes of public property, the inference is clear that it did not intend that other classes should be exempt. (26 R. C. L., p. 291; *Chicago Sanitary Dist.* v. *Martin,* 173 Ill. 243, [64 Am. St. Rep. 110, 50 N. E. 201] ; *Board of Trustees* v. *Atlanta,* 113 Ga. 883, [54 L. R. A. 806, 39 S. E. 394].) But under our constitution the matter is made conclusive by the direction that all property not so enumerated shall be taxed.

This court was confronted with such an alternative in the case of *Reclamation Dist.* v. *Sacramento,* 134 Cal. 477, [66 Pac. 668]. As stated in the opinion in that case: "The sole question presented is, whether property acquired by a reclamation district as necessary and indispensable to the execution of its objects is subject to taxation for state and county purposes." Exemption was claimed for this property by the district under section 1 of article XIII of the constitution as it read prior to the amendment of 1914 exempting all property which belongs to "this state, or to any county or municipal corporation within this state." Reviewing the authorities on the question as to whether or not a reclamation district was a municipal corporation, without directly passing upon this point, the court disposes of the case upon another theory. It says: "It is not necessary to hold this property, thus acquired, to be the property of a municipal corporation, in order to make it exempt from taxation. It would be sufficient to hold that it is public property of the state, within the meaning of the constitution."

It requires great latitude of construction to hold the property of a reclamation district as property "belong-

ing to the state," but, considering the nature of such district organization with its limited corporate powers under the law as it existed at the time covered by this decision, it was perhaps a more logical conclusion than to class it as a municipal corporation.

The supreme court of Illinois in determining the liability of a drainage district of the city of Chicago to taxation upon property it owned outside the corporate limits of the city under analogous constitutional provisions (*Chicago Sanitary Dist.* v. *Martin*, 173 Ill. 243, [64 Am. St. Rep. 110, 50 N. E. 201]), held that as the legal title to the property was vested in the district, it could not be held to be property "belonging to the state."

*People* v. *Morrill*, 26 Cal. 336, defines "lands belonging to the state" as those "(1), which it holds by virtue of grants from the United States; (2), those which it owns by reason of its sovereignty." In either event, the term implies ownership and not mere authority and control over. In view of the fact that the law of California governing irrigation districts expressly provides that "the legal title to all property acquired under the provisions of this act shall immediately and by operation of law vest in such irrigation district," it would be an elastic use of terms to hold that the interests of the state in such lands amounts to such ownership as to justify holding such property to belong to the state.

As previously pointed out, the only remaining alternative which will permit of any exemption of irrigation district property at all is to include such district for the purposes of this section as a "municipal corporation."

It, of course, follows that if the general exemption clause of section 1, article XIII, of the constitution, includes irrigation districts under the classification of "municipal corporations," the exception from such exemption of "lands and the improvements thereon located outside the county, city and county or municipal corporation owning the same," must also apply to such irrigation districts, for the term "municipal corporations" is obviously used in the same sense in both connections.

But the most persuasive reason for classifying an irrigation districe as a municipal corporation under this constitutional provision is that any other construction, in my

opinion, defeats the very apparent purpose of the amendment.

It is doubtless true, as set forth in the argument presented to the voters on the submission of this amendment, that the inducing cause of the amendment was the acquisition of large real estate interests in the counties of Tuolumne, Mono, and Inyo for reservoir purposes by the distant cities of Los Angeles and San Francisco. These corporations happen to be governmental municipalities, but that was not the circumstance which appealed to the voters of these counties and others likely to be invaded by public power and water purveyors.

The real purpose was to prevent abuses threatened and likely to recur from permitting private lands subject to taxation in one jurisdiction to be taken over for public uses by other communities and by depriving the territory in which the lands are situated of the revenue from this taxation thus throw part of the burden of such public use upon territory not benefited by it. What possible reason or justification could there be for protecting these outside jurisdictions from the incursions of towns and cities in search of water storage and distribution and leaving them exposed to precisely the same invasion by extensive irrigation districts outside their territory. The gist of the matter clearly appears in the part of the argument for this constitutional amendment which says: "Uncertainty on this matter should be removed by a legal assurance that while natural resources within one county may be directly used for the upbuilding of another, lands or other property already upon the invaded county's tax-roll shall continue to bear its share of maintaining the county government."

The direct object of the amendment was to protect and conserve the revenues of the invaded territory, and with that object in view it can make no difference whether the public use acquired is by a city or county, or some other public corporation exercising municipal functions.

No violence is done to the rules of construction under the interpretation of the term "municipal corporations" here contended for. It is common knowledge that in popular usage the term "municipal corporation" is understood as applying to all departments of state organiza-

tion exercising public functions, and the same general use
of the term is common in judicial decisions and with law
text-writers.

In 19 Ruling Case Law, page 691, it is said that "municipal" in its primary sense means "pertaining to a
town or city or to its local government," but it also declares that the word "municipal" "has two meanings,
one of which is pertaining to the internal government of
a state or nation, and in that sense every corporation
formed for governmental purposes is a municipal corporation"; and, further, at page 696, it is said: "The legislature frequently organizes the people of a certain territory
into a district having certain limited powers for the carrying out of some particular public purpose. Familiar examples are school districts . . . irrigation districts, levee
districts . . . but it has been held that such a district
is a 'corporation for municipal purposes.'" Such district organizations are very commonly referred to in the
California decisions as public corporations for municipal purposes, or *quasi*-municipal corporations. (*Merchants'*
*Bank* v. *Escondido Irr. Dist.*, 144 Cal. 329, [77 Pac. 937];
*People* v. *Reclamation Dist.*, 117 Cal. 120, [48 Pac. 1016];
*Central Irr. Dist.* v. *De Lappe,* 79 Cal. 351, [21 Pac.
825]; *Turlock Irr. Dist.* v. *Williams,* 76 Cal. 366, [18 Pac.
379]; *Hughes* v. *Ewing,* 93 Cal. 414, [28 Pac. 1067];
*Perry* v. *Otay Irr. Dist.*, 127 Cal. 565, [60 Pac. 40];
*Jenison* v. *Redfield,* 149 Cal. 500, [87 Pac. 62]; *Fogg* v.
*Perris Irr. Dist.*, 154 Cal. 209, [97 Pac. 316]; *Healey* v.
*Anglo-Californian Bank,* 5 Cal. App. 278, [90 Pac. 54];
*Dean* v. *Davis,* 51 Cal. 409.)

The same classification is maintained in the federal
courts in the consideration of such districts under the
laws of California. (*Fallbrook Irr. Dist.* v. *Bradley,* 164
U. S. 174, [41 L. Ed. 369, 17 Sup. Ct. Rep. 56]; *Tulare
Irr. Dist.* v. *Shepherd,* 185 U. S. 1, [46 L. Ed. 773, 22 Sup.
Ct. Rep. 531, see, also, Rose's U. S. Notes]; *Herring* v.
*Modesto Irr. Dist.*, 95 Fed. 705.)

In the construction of words used in a constitution a
more general and inclusive definition is often recognized
than in the more technical provisions of a statute or a
contract. A constitution is the formulation of broad gen-

eral rules of governmental policy submitted to the popular will and understanding for their adoption.

"Where a word, having a technical as well as a popular meaning, is used in a constitution, the courts will accord to it its popular signification." (*Weill* v. *Kenfield,* 54 Cal. 111; *Miller* v. *Dunn,* 72 Cal. 462, 465, [1 Am. St. Rep. 67, 14 Pac. 27]; *Towle* v. *Matheus,* 130 Cal. 574, 577, [62 Pac. 1064]; *San Pedro etc. R. Co.* v. *Hamilton,* 161 Cal. 610, 617, [37 L. R. A. (N. S.) 686, 119 Pac. 1077]; *Perrin* v. *Miller,* 35 Cal. App. 129, 132, [169 Pac. 426].)

This rule of liberal construction appears to have been applied by this court in *Southern Pac. Co.* v. *Levee Dist. No. 1,* 172 Cal. 345, [156 Pac. 502], construing the use of the word "municipal" in an amendment to the state constitution in a way which we think has a marked bearing on this case. In the amendment of the constitution by adoption of the new section 14, article XIII, for the purpose of changing the system of taxation of corporations, it was declared that the system of taxation provided should "be in lieu of all other taxes and licenses, state, county and municipal." Levee District No. 1 of Sutter County, being a levee district organized under the act of the legislature for the creation of such districts, undertook to levy a tax upon property of the Southern Pacific Company within such district, and attempted to sustain the validity of such tax against the plea of this constitutional amendment on the ground that it is a district and not a municipality, and that the amendment does not exempt from district taxation. This court in the case cited, while holding directly that such levy district was not a municipal corporation, decided upon an exhaustive consideration of the purposes of the section, and the obvious intent of the constitutional amendment, that district taxes of this nature were included under the term "municipal," and says: "It would appear to be beyond peradventure, therefore, that when the constitution declared that the state taxes 'shall be in lieu of all other taxes, state, county, and municipal' it used the words 'state, county and municipal' as inclusive and descriptive, and not as designed to exempt districts from its operation . . . "

An irrigation district probably comes nearer than any other of the subordinate public corporations of the state

to meeting the technical requirements defining a municipal corporation. It has its own directors and officers, conducts its own elections, can sue and be sued in its corporate name, issues bonds, levies, collects, and disburses its own revenues, acquires and holds property, both real and personal, in its own name, and in the management of its internal affairs is entirely independent of the county and state, aside from the control of general laws.

While the courts have frequently drawn the line between public corporations of a *quasi*-municipal character and those performing strictly municipal functions, it has usually been for the purpose of defining limitations upon the political powers of these lesser state agencies, but no reason seems to exist why the distinction should be pushed so far in this case as to exclude irrigation districts from the operation of the constitutional amendment under discussion.

Rehearing denied.