ROCK CREEK WATER DISTRICT, Respondent, v.
COUNTY OF CALAVERAS, Appellant.

Virgil M. Airola, District Attorney, for Appellant.

C. R. Montgomery for Respondent.

CARTER, J.—Plaintiff, Rock Creek Water District, recovered judgment against defendant Calaveras County for taxes paid under protest.

Plaintiff is a public agency organized in April, 1941, under the California Water District Act (Stats. 1913, p. 815; 3 Deering's Gen. Laws, Act 9125), and embraces territory lying wholly within Stanislaus County, the some 1,800 acres being owned by four persons. Plaintiff owns property situated in defendant taxing county consisting of a dam, reservoir, water rights and easements for ditches, canals and pipe lines. Defendant levied a property tax on that property which plaintiff paid under protest.

Plaintiff claims its property is exempt from taxation under section 1 of article XIII of the Constitution of California. After providing that all property is subject to taxation the Constitution declares that: "further provided, that property . . . [1] such as may belong to this State or to any county, city and county, or municipal corporation within this State shall be exempt from taxation, [2] except such lands and the improvements thereon located outside of the county, city and county or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said county, city and county, or municipal corporation; provided, that no improvements of any character whatever constructed by any county, city and county, or municipal corporation shall be subject to taxation." (The clauses are numbered for convenience in reference.) (Cal. Const., art. XIII, § 1.) Plaintiff urges that it falls within clause 1 and its property is thus exempt whereas defendant asserts that plaintiff

falls within clause 2 and hence the property is excluded from the exemption.

Plaintiff district's chief function, like irrigation districts, is to supply water for irrigation to landowners within its boundaries. It operates substantially the same as an irrigation district under the California Irrigation District Law (Water Code, §§ 20500 et seq.).

It is quite apparent that in order for plaintiff to benefit by clause 1 the property owned by it in defendant county must either belong to the state or plaintiff must be classified as a municipal corporation. It is not claimed by either defendant or plaintiff that the latter is a county or city and county, and it is conceded that the property in question was acquired from a public utility supplying water to the persons who formed plaintiff district and was subject to taxation at the time of its acquisition. If the property held by plaintiff belongs to the state it is clearly exempt and the second clause does not exclude it from the exemption. Likewise if it is within the scope of the term ''municipal corporation'' as used in the first clause conferring the tax exemption, it is also embraced in that term as used in the second clause and hence its property which lies outside its territorial limits is subject to taxation.

■ It is fundamental that the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation. (*People* v. *Moroney,* 24 Cal.2d 638 [150 P.2d 888]; *Gage* v. *Jordan,* 23 Cal. 2d 794 [147 P.2d 387]; *California Drive-in Restaurant Assn.* v. *Clark,* 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028]; *Estate of Ryan,* 21 Cal.2d 498 [133 P.2d 626]; *Metropolitan W. Dist.* v. *County of Riverside,* 21 Cal.2d 640 [134 P.2d 249]; *San Francisco* v. *San Mateo County,* 17 Cal.2d 814 [112 P.2d 595].) ■ And that is true of the constitutional provision here involved. (*San Francisco* v. *San Mateo, supra.*) The purpose of clause 2 is ''to protect from the loss of taxable properties, those counties in which municipalities acquire property for the operation of various municipal projects. . . . Prior to the amendment, the property of municipalities lying outside their corporate boundaries was exempt from taxation and that resulted in many instances in the county in which such property was situated losing large sources of revenue, a loss which it could ill afford. The aim of the amendment was to eliminate

that condition." (*San Francisco* v. *San Mateo County, supra,* 818.) (See, also, *Metropolitan W. Dist.* v. *County of Riverside, supra; San Francisco* v. *County of Alameda,* 5 Cal.2d 243 [54 P.2d 462] ; *Pasadena* v. *County of Los Angeles,* 182 Cal. 171 [187 P. 418].) And in line with that policy the term municipal corporation must be given a broad meaning unrestrained by the strict technical sense of the term. (*Metropolitan W. Dist.* v. *County of Riverside, supra,* 644, disapproving the contrary view in *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [198 P. 1060, 17 A.L.R. 72], and *Laguna Beach County Water Dist.* v. *County of Orange,* 30 Cal.App.2d 740 [87 P.2d 46].)

▇ The evil to be remedied is as clearly present whether the agency be an irrigation district or water district such as is here involved or a city—a municipal corporation in the strict sense. The agency acquires for the benefit of its inhabitants or the property within its boundaries property which lies outside its territory. That property receives the protection of the tax supported governmental agencies of the county in which it lies. There is no reason why the persons within the agency who receive the benefits of its activities should receive aid by way of tax exemption of its property at the expense of the taxpayers in the outside area. In the argument to the voters when clause 2 was added by the 1914 amendment to section 1 of article XIII of the Constitution, reference was made by *illustration* to two cities, Los Angeles and San Francisco, but the principle for which the example was given was stressed as follows: "It is to remedy such a condition that this amendment was proposed. Uncertainty on the matter should be removed by a legal assurance that while natural resources within one county may be directly used for the upbuilding of another, lands or other property already upon the invaded county's tax-roll shall continue to bear its share of maintaining the local government." (*Turlock Irr. Dist.* v. *White, supra,* p. 185.) The matter is forcefully put by Justice Sloane in his dissenting opinion in *Turlock Irr. Dist.* v. *White, supra,* page 193: "It is doubtless true, as set forth in the argument presented to the voters on the submission of this amendment [clause 2], that the inducing cause of the amendment was the acquisition of large real estate interests in the counties of Tuolumne, Mono, and Inyo for reservoir purposes by the distant cities of Los Angeles and San Francisco. These corporations happen to be governmental munici-

palities, but that was not the circumstance which appealed to the voters of these counties and others likely to be invaded by public power and water purveyors.

"The real purpose was to prevent abuses threatened and likely to recur from permitting private lands subject to taxation in one jurisdiction to be taken over for public uses by other communities and by depriving the territory in which the lands are situated of the revenue from this taxation thus throw part of the burden of such public use upon territory not benefited by it. What possible reason or justification could there be for protecting these outside jurisdictions from the incursions of towns and cities in search of water storage and distribution and leaving them exposed to precisely the same invasion by extensive irrigation districts outside their territory. The gist of the matter clearly appears in the part of the argument for this constitutional amendment which says: 'Uncertainty on this matter should be removed by a legal assurance that while natural resources within one county may be directly used for the upbuilding of another, lands or other property already upon the invaded county's tax-roll shall continue to bear its share of maintaining the county government.'

"The direct object of the amendment was to protect and conserve the revenues of the invaded territory, and with that object in view it can make no difference whether the public use acquired is by a city or county, or some other public corporation exercising municipal functions.

"No violence is done to the rules of construction under the interpretation of the term 'municipal corporations' here contended for. It is common knowledge that in popular usage the term 'municipal corporation' is understood as applying to all departments of state organization exercising public functions, and the same general use of the term is common in judicial decisions and with law text-writers. . . .

"An irrigation district probably comes nearer than any other of the subordinate public corporations of the state to meeting the technical requirements defining a municipal corporation. It has its own directors and officers, conducts its own elections, can sue and be sued in its corporate name, issues bonds, levies, collects, and disburses its own revenues, acquires and holds property, both real and personal, in its own name, and in the management of its internal affairs is entirely independent of the county and state, aside from the control of general laws."

*Turlock Irr. Dist.* v. *White, supra,* and *Laguna Beach County Water Dist.* v. *County of Orange, supra,* take a contrary view but those cases are based upon the assumption that the words "municipal corporation" were used in a strict technical sense. That view has been disapproved. (*Metropolitan W. Dist.* v. *County of Riverside, supra,* p. 644.) Moreover the Turlock case classified an irrigation district as a public corporation for municipal purposes and hence not a municipal corporation, but we stated in the Metropolitan case (page 644): "We conclude, therefore, that the words 'municipal corporation,' as used in the constitutional provision, were intended to include a district of the type of plaintiff, whether for descriptive purposes it be designated a municipal corporation in the technical sense, a *quasi*-municipal corporation (which plaintiff here concedes itself to be), or a public corporation for municipal purposes." Therefore the Turlock and Laguna Beach cases are overruled. Whether irrigation or water districts such as we have here are municipal corporations in connection with tort liability and other questions is not important. Perceiving the object of clause 2 the use of the term in question must embrace a water district. It is of interest to note that although this court refers to a municipal water district (Stats. 1911, p. 1290) as a subdivision of the state it is declared to be a municipal corporation in construing the rights granted by the state to "municipal corporations" for rights of way over state property. (*State of California* v. *Marin Mun. W. Dist.,* 17 Cal.2d 699 [111 P.2d 651]). We have seen that an irrigation district and a water district are substantially the same. A municipal water district may include unincorporated as well as incorporated territory and its principal function is to supply water for domestic service whereas an irrigation or water district is primarily concerned with supplying water for irrigation. That furnishes no rational basis for a distinction.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.