[Civ. No. 27633.   Second Dist., Div. One.   May 25, 1964.]

JACK W. BARNETT, Plaintiff and Respondent, v. CITY OF ALHAMBRA, Defendant and Respondent; CITY OF PASADENA, Defendant and Appellant; COUNTY OF LOS ANGELES, Intervener and Respondent.

Wendell R. Thompson, City Attorney (Pasadena), Fred R. Metheny, Assistant City Attorney, Donald B. Hagler, Evelynn M. Finn and Robert A. Neher, Deputy City Attorneys, for Defendant and Appellant.

Don Bercu, City Attorney (Alhambra) for Plaintiff and Respondent and Defendant and Respondent.

Harold W. Kennedy, County Counsel, and John J. Collins, Deputy County Counsel, for Intervener and Respondent.

WOOD, P. J.— In or about 1888 the City of Pasadena acquired certain real property (approximately 33 acres) which was located outside the city, in unincorporated territory in Los Angeles County, and has owned the property since that time. In 1944 the City of Alhambra annexed an area which included said property owned by Pasadena.

In 1961 plaintiff Jack W. Barnett, as a taxpayer of Alhambra, commenced this action for a declaration that said

property (owned by Pasadena and annexed to Alhambra) is subject to taxation by Alhambra. (In a second cause of action in that complaint, plaintiff sought a declaration that certain leases of the property, made by Pasadena, were illegal and void; however, this cause of action was dismissed by plaintiff.)

In February 1963, the County of Los Angeles, pursuant to leave of court, filed its complaint in intervention, wherein the county sought a declaration that the Pasadena-owned property, located in Alhambra, was taxable.

The cause was submitted upon stipulations, the joint pretrial statement, and the pleadings. A recital in the judgment is that findings were waived because the parties had stipulated to the material facts. The judgment is that the property is subject to taxation by Alhambra and by Los Angeles County, and the property is not exempt from taxation.

Pasadena appeals from the judgment, and contends that the property is exempt from taxation.

The determination of the question herein, as to taxation of Pasadena's property located in Alhambra, depends upon the interpretation of article XIII, section 1, of the California Constitution.

When Pasadena acquired the property (about 1888) the said article and section of the Constitution provided: "All property in the State, not exempt under the laws of the United States, shall be taxed in proportion to its value. ... The word 'property,' as used in this article and section, is hereby declared to include moneys, credits ... and all other matters and things, real, personal, and mixed . . . ; provided, that . . . property used exclusively for public schools, and *such as may belong t*o the United States, this State, or to *any* county or *municipal corporation* within this State, *shall be exempt from taxation. ...*" (Italics added.)

Said section as amended in 1914 provided (the material amending portion is italicized herein) : "All property in the State ... shall be taxed in proportion to its value. ... The word 'property,' as used in this article and section, is hereby declared to include moneys, credits ... and all other matters and things, real, personal, and mixed. ...; provided, that ... property used exclusively for public schools, and such as may belong to ... this State, or to any county ... or municipal corporation within this State shall be exempt from taxation, *except such lands and the improvements thereon located outside of the county, city and county or municipal corporation*

*owning the same as were subject to taxation at the time of
the acquisition of the same by said county, city and county
or municipal corporation; provided, that no improvements of
any character whatever constructed by any county, city and
county or municipal corporation shall be subject to taxation.
All lands or improvements thereon, belonging to any county,
city and county or municipal corporation, not exempt from
taxation, shall be assessed by the assessor of the county, city
and county or municipal corporation in which said lands or
improvements are located. . . ."*

It thus appears, according to said section in effect in 1888,
that when the property was acquired by Pasadena it was
exempt from taxation. The 1914 amendment of the section
stated an exception to the exemption. The portion of the
amended section, applicable herein, (after omitting the re-
peated references therein to "county, city and county") is
that property of a municipal corporation shall be exempt
from taxation, except such lands and improvements thereon
located outside the municipal corporation owning the same as
were subject to taxation at the time of acquisition of the
same by the municipal corporation. The basic provision of the
amended section, as applicable here, is that property of a city
is exempt from taxation; and the exception thereto is that a
city's real property which is located outside the city, and
which was subject to taxation when the city acquired it, is
not exempt from taxation.

In the present case the property involved is owned by, and
is outside the boundaries of, the City of Pasadena. The con-
troversy is whether the property, at the time of its acquisi-
tion by Pasadena, was subject to taxation within the meaning
of the words "subject to taxation at the time of the acquisi-
tion," as those words were used in the amended section. It is
obvious, of course, that the property (which was annexed to
Alhambra in 1944) was not "subject to taxation" by
Alhambra at the time the property was acquired by Pasadena
in 1888. The parties have agreed, however, that the prop-
erty was subject to taxation by various government
agencies, other than the City of Alhambra, immediately prior
to, immediately subsequent to, and at the time of the acquisi-
tion of the property by Pasadena in 1888, and that such
taxes were assessed and collected. (The agencies so referred
to were the Savannah School District, the El Monte Road
District, the San Gabriel Road District, and the San Gabriel
School District. During the period of such taxation, begin-

ning in 1879, the property was known as the "Pasadena Sewer Farm.") Appellant (Pasadena) argues that since the property was not subject to taxation by Alhambra at the time of its acquisition by Pasadena, the property is not taxable by Alhambra.

Appellant argues further to the effect that the intent of the electorate in adopting the 1914 amendment to the Constitution is an important factor in interpreting the section as amended; that such intent was to preserve to counties and cities, in which other counties or cities acquire real property, a continuation of the acquired property on the tax rolls, and to protect such invaded counties and cities from a loss of taxable property. With reference to such intent, appellant cites *Rock Creek Water Dist.* v. *County of Calaveras,* 29 Cal.2d 7, 9 [172 P.2d 863], wherein it is said that the purpose of said constitutional provision is " 'to protect from the loss of taxable properties, those counties in which municipalities acquire property for the operation of various municipal projects. ... Prior to the amendment, the property of municipalities lying outside their corporate boundaries was exempt from taxation and that resulted in many instances in the county in which such property was situated losing large sources of revenue, a loss which it could ill afford. The aim of the amendment was to eliminate that condition.' " It was also said in that case (p. 11): " 'The real purpose was to prevent abuses threatened and likely to recur from permitting private lands subject to taxation in one jurisdiction to be taken over for public uses by other communities and by depriving the territory in which the lands are situated of the revenue from this taxation thus throw part of the burden of such public use upon territory not benefited by it. . . . The direct object of the amendment was to protect and conserve the revenues of the invaded territory, and with that object in view it can make no difference whether the public use acquired is by a city or county, or some other public corporation exercising municipal functions.' "

It appears that the 1914 amendment of article XIII, section 1, of the California Constitution was adopted during a period of time when large cities of California, Los Angeles and San Francisco, were acquiring large areas of land, outside such cities and in distant counties, for use in connection with the construction of aqueducts and other water supply equipment. In *City & County of San Francisco* v. *County of Alameda,* 5 Cal.2d 243, 245-246 [54

P.2d 462], it was said: " 'The undoubted purpose of the amendment was primarily to safeguard the tax revenues of smaller counties where large municipal corporations had purchased, or would acquire, extensive holdings and which would, except for the amendment, be exempt from local taxation. With the exemption in force, the serious financial embarrassment of the counties in which the holdings were situated was a reality. The argument sent to the electors of the state when the amendment was proposed also discloses that, unless the amendment be adopted, impending disaster would result to smaller counties by the removal from the local tax rolls of lands and water rights acquired and to be utilized in . connection with the acquisition or extension of municipal water supplies such as were then in progress by the city and county of San Francisco and the city of Los Angeles. The adoption of the amendment was evidence that the acquisition of such lands and water rights should be without prejudice to the outlying counties whose existence from an economic and governmental standpoint depended upon the tax revenues derived therefrom. It was therefore provided that such lands and improvements thereon as were taxable at the time of the acquisition of the same by municipalities should continue to be taxable and should not be exempt from local taxation.' ''

Appellant asserts further that the question here is not whether the property was subject to taxation by someone in 1888, after its acquisition by appellant, but the question is whether at the time of the acquisition by Pasadena the property was being legally taxed by Alhambra or by Los Angeles County, and whether, as a consequence of the acquisition, the property had to be removed from the tax rolls of Alhambra or the county. It (appellant) also states that since the property was annexed to Alhambra in 1944, Alhambra did not lose any revenue by reason of Pasadena's acquisition of the property in 1888; that it was not shown that the property was removed from the county tax rolls or that the county lost any revenue by reason of such acquisition; that Alhambra will suffer no financial hardship, because it has the right to tax the possessory interest of Pasadena's lessees who use the property for private businesses; and that in any event the property is not subject to taxation by both Alhambra and the county.

Respondents Alhambra and Los Angeles County argue that the words "subject to taxation at the time of the acquisi-

tion'' do not mean subject to taxation by Alhambra at the time of acquisition by Pasadena, but that those words mean subject to taxation by any taxing agency at the time of acquisition by Pasadena.

Although it appears that the particular object in view at the time of adopting the amendment was to preserve to a local county a continuance of its tax revenue from lands acquired in the local county by an outside or distant municipality or county, the language of the amendment did not expressly limit the application of the amendment only to such circumstances. The language of the amendment, designating the property which is not exempt from taxation, is ''such lands ... located outside of the ... municipal corporation owning the same *as were subject to taxation at the time of the acquisition of the same by said ... municipal corporation.*'' (Italics added.) It was a constitutional amendment designating, in broad and general terms, the nonexempt property as that which was ''subject to taxation at the time of the acquisition.'' In the present case the property was not subject to taxation by Alhambra at the time of its acquisition by Pasadena (at that time the property had not then been annexed to Alhambra), but it was then subject to taxation by four government agencies (school and road districts). It was not necessary, in order for Alhambra or the county to tax the property, that either of them should have lost any revenue or suffered financial hardship as a result of the acquisition of the property by Pasadena. In *City & County of San Francisco* v. *County of Alameda, supra,* 5 Cal.2d 243, 246 [54 P.2d 462], it was said: ''The fact that the continuing right of taxation should in some instances inure to the benefit of counties not so sorely pressed by reason of the prior exemption, is but an incident and cannot disturb the manifest and general operation of the amendment.'' In the present case it is apparent, however, that Alhambra will suffer some financial detriment, if it is not allowed to tax the property, in that it is required to render municipal services with respect to the protection and supervision of the property, within its territorial boundaries, in the same manner as it renders such services for other property in the city, and of course the city incurs expenses in connection therewith. It is also apparent that the county likewise renders governmental services for the benefit of the property and incurs expenses in connection therewith. Even if Alhambra is entitled to and does tax the possessory interest

of Pasadena's lessees in the property, it cannot be said that such a tax is satisfaction of a right, if any, to tax the lands. ▮ The property is subject to taxation by Alhambra and the county.

The judgment is affirmed

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied June 16, 1964, and appellant's petition for a hearing by the Supreme Court was denied July 22, 1964.