[Sac. No. 2154.    In Bank.—March 18, 1916.]

## SOUTHERN PACIFIC COMPANY (a Corporation), Appellant, v. LEVEE DISTRICT NO. 1 OF SUTTER COUNTY et al., Respondents.

TAXATION—LEVEE DISTRICT TAX—ASSESSMENT FOR BENEFITS.—The tax levied by Levee District No. One of Sutter County to pay the principal and interest on an outstanding bonded indebtedness of the district is a tax and not an assessment for benefits.

ID.—PUBLIC SERVICE CORPORATION—OPERATIVE PROPERTY WITHIN LEVEE DISTRICT—DISTRICT TAX TO PAY BONDED INDEBTEDNESS.—The provisions of section 14 of article XIII of the constitution, establishing a method of taxing the operative property of certain public service corporations for state purposes, and providing that such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon such property, except as otherwise provided in such section, have the effect to exempt the operative property of such corporations, situated in a levee district, from all taxation by such district, except to pay the principal and interest of bonded indebtedness created and outstanding by the district before the adoption of that section of the constitution.

ID.—PAYMENT OF ENTIRE TAXES TO STATE—SUBSEQUENT LEVEE OF DIS TRICT TAX—LIABILITY OF STATE TO DISTRICT FOR DISTRICT TAXES— PAYMENT UNDER PROTEST.—Where in pursuance of and at the time required by such constitutional provision, a railroad company, owning operative property within a levee district, pays into the state treasury the entire amount of the four per cent of its gross revenue due from it in full of all its taxes, before a levee district tax thereon for the payment of such outstanding bonded indebtedness of the district had been assessed and levied, it became the duty of the state controller, after the amount of the district tax was lawfully fixed and payable, and demand had been made upon him for the payment of the same, to pay it to the district. If he refuses so to do, and the railroad company pays the same to the district under protest, it may recover it back.

ID.—Self-executing Provisions of Constitution—Controller Justified in Paying District.—Such constitutional provisions being self-executing, the mere fact that the legislature has omitted to provide adequate methods for the payment to such districts of the amounts of their taxes, does not justify the controller in refusing to make the payment. Proper vouchers showing the payment and proper entries in his books disclosing the nature and amount of the disbursement, will amply protect the controller.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

Henley C. Booth, and William F. Herrin, for Appellant.

Garret W. McEnerney, *Amicus Curiae*, for Appellant.

U. S. Webb, Attorney-General, and Robert W. Harrison, Deputy Attorney-General, for Respondent, Controller of the State of California.

M. E. Sanborn, and Lawrence Schillig, District Attorney, for other Respondents.

HENSHAW, J.—The differences between the plaintiff and the parties defendant were submitted to the superior court for decision under an agreed statement of facts, as contemplated by section 1138 of the Code of Civil Procedure. The judgment of the superior court was against plaintiff, and this appeal followed.

The stipulated facts essential to this consideration are the following: By the constitutional amendment and the legislative enactments passed in subordination thereto, public service corporations, of which plaintiff is one, pay to the state a percentage of their gross revenues, fixed by law, as a "commutated or substituted tax for other taxes which were or might have been levied." (*Pacific Gas & Electric Co.* v. *Roberts,* 168 Cal. 420, [143 Pac. 700].) This tax for the year beginning July 1, 1911, was four per cent of the gross receipts arising from the operations of plaintiff within the state of California during the calendar year of 1910. It was due and payable on the first Monday of July (Const., art. XIII, sec. 14, subd. f) and was by appellant paid in full.

Defendant Levee District No. One of Sutter County is organized under special acts of the legislature. (Stats. 1867, p. 316; Stats. 1873–74, p. 511; Stats. 1907, p. 47; Stats. 1911, p. 347.) The district has an assessor whose duty it is between the first Monday in March and the first Monday in July of each year to assess at its actual cash value "all the real and personal property in said district" for the purpose of raising revenue for the maintenance and support of the district. The personal property tax must be promptly collected and is made a lien upon the real property of the owner of both. Seizure and sale may be made of the personal property to enforce this tax. On the first Monday of July and thereafter the board of directors of the district must meet to examine and equalize the assessment. The board of directors also estimate the percentage of the tax necessary to be levied, and to do this thing must meet on the third Monday in September and fix the rate. The clerk of the board of supervisors certifies this rate to the county auditor and the corrected and equalized assessment-roll is delivered to that official. He makes the necessary computations, fixing the individual taxes at the rate prescribed, and on or before the second Monday in October delivers the assessment-book to the tax collector of the district. The tax collector of the district then publishes a notice for two weeks, specifying that all taxes are due and payable and that they will become delinquent at noon on the first Monday of January next succeeding unless paid prior thereto. From the date of the delivery of the assessment-roll to the tax collector of the district the taxes levied become a lien on the lands within the district. All moneys received by the tax collector of the district are to be paid into the county treasury of Sutter County, and the treasurer shall pay out of these moneys the interest and principal of the bonds of the district as required by law, and shall disburse the funds remaining after so doing on warrants drawn by the county auditor upon this fund.

Prior to the change in the method of taxing public utilities (Const., art. XIII, sec. 14), and continuously thereafter, up to and including the time of the submission of this controversy to the superior court, the defendant levee district had an outstanding bonded indebtedness of four hundred thousand dollars, saving that sixty thousand dollars of this bonded indebtedness had been paid.

The levee district proceeded to assess, levy, and enforce the collection of its annual tax upon and against the operative properties of the plaintiff. This tax, it will be noted, was not fixed as to amount nor did it become a lien until long after the date when the annual state tax of plaintiff had become due and payable and had been paid.

Before seeking to enforce the collection of this tax against plaintiff the levee district made formal demand upon the controller to pay over to it out of the tax so collected from plaintiff the amount of the district tax against plaintiff's property. Upon the controller's refusal so to do demand was made upon the plaintiff for the payment of this district tax, with threats of the enforcement of the penalty provided by law for its failure to pay. Under this compulsion plaintiff paid this district tax, accompanying the payment by written objection and protest.

Appellant's contention is that it is entitled to a recovery of the amount of the tax thus paid to the district, and it stands indifferent as to whether that recovery should be had from the district directly or from the controller. The district insists that appellant is entitled to no recovery, but if it should be held that it is entitled to a recovery that recovery should be had against the controller. The controller joins with the district in disputing appellant's right to any recovery, but further urges that no recovery can be had against the state because the tax which appellant paid to the state was paid voluntarily and without protest. The other defendants are sued merely in their representative capacities—some as directors of the district, and of the others O'Banion is the treasurer of Sutter County and thus the custodian of the district's funds, and Ohleyer is the assessor of the levee district.

These defendants are impleaded not alone as proper parties defendant for the recovery of the moneys, but because appellant also seeks injunctive relief against the district and its officers, which injunctive relief is that the district and its officers be prohibited from further levying a similar tax against appellant's operative properties within the district. With this statement of facts clearly in mind, we may proceed to a consideration of the legal questions presented by the controversy. Upon this consideration the following quotations from the constitution have a controlling bearing. "Taxes levied, assessed, and collected as hereinafter provided upon

[the operative properties of] railroads . . . shall be entirely and exclusively for state purposes, and shall be levied, assessed, and collected in the manner hereinafter provided.'' (Const., art. XIII, sec. 14.) ''Such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated of such companies, except as otherwise in this section provided.'' (Const., art. XIII, sec. 14, subd. a.) For a better understanding of the questions presented, and for convenience, the words embraced in brackets have been interpolated into the constitutional provisions.

''All property enumerated in subdivisions a, b, and d of this section [being all of the properties of these corporations excepting their shares of stock] shall be subject to taxation, in the manner provided by law to pay the principal and interest of any bonded indebtedness created and outstanding by any city, city and county, county, town, township, or district, before the adoption of this section. The taxes so paid for principal and interest on such bonded indebtedness shall be deducted from the total amount paid in taxes for state purposes.'' (Const., art. XIII, sec. 14, subd. e.)

''All the provisions of this section shall be self-executing, and the legislature shall pass all laws necessary to carry this section into effect. . . . The legislature shall provide for reimbursement from the general funds of any county to districts therein where loss is occasioned in such districts by the withdrawal from local taxation of property taxed for state purposes only.'' (Const., art. XIII, sec. 14, subd. f.)

The first proposition advanced by all of the respondents is that the tax levied by the levee district is not a tax at all. Of course respondents do not by this mean to be understood as saying that it is not a tax as distinguished from an assessment for benefits. For the contrary has been decided in the case of this defendant levee district as to the precise form of raising revenues which the legislature has authorized it to employ. (*People* v. *Whyler*, 41 Cal. 351; *Williams* v. *Corcoran*, 46 Cal. 553; *Wilson* v. *Board of Supervisors of Sutter Co.*, 47 Cal. 91.) While to the same effect are the cases of *Smith* v. *Farrelly*, 52 Cal. 77, and *City Street Imp. Co.* v. *Regents, etc.*, 153 Cal. 776, [18 L. R. A. (N. S.) 451, 96 Pac. 801]. What respondents really mean is that because this tax partakes in its nature of an assessment for benefits, and as

benefit assessments are not expressly forbidden by the constitution, this tax should be construed as a benefit assessment and thus upheld. But this very argument was advanced in the Whyler case, and was disposed of after discussion by a declaration to the effect that while the legislature might have authorized the district to levy benefit assessments upon the land, it saw fit to authorize the district to levy a general tax upon all property, real and personal, without regard to benefits, and that the two methods of raising revenue were so entirely distinct, were permissible upon such wholly different grounds, that there could be no legal identity established between them. And such is the view of all the authorities, though reference need be made only to *Neenan* v. *Smith,* 50 Mo. 525, and Cooley, Taxation, 3d ed., p. 1290. There can be no possible escape from the conclusion therefore, that when the constitution declares that the taxes paid by corporations such as appellant "shall be in lieu of all other taxes," there is no power in this court to split the phrase "all other taxes," and exempt from the operation of this universal language some taxes of a specific kind levied for some specific purpose. We are then throughout this case considering the law only as it applies to taxes and not to assessments for benefits.

The next proposition, for which all of respondents contend, is that conceding this to be a tax, while the constitution has declared that the method which it has adopted for raising this revenue from these corporations for state purposes shall be in lieu of all other taxes and licenses, state, county and municipal, and has thus in effect forbidden the levy of such taxes by the enumerated corporate subdivisions of the state, namely, counties and municipalities, it has not forbidden the imposition of such taxes upon the properties of these corporations by districts which are in no true sense municipal corporations. It may at once be said, as has been frequently decided, that these district agencies and mandatories of the state are not municipal corporations. (*People* v. *Reclamation Dist. No. 551,* 117 Cal. 114, [48 Pac. 1016]; *Hensley* v. *Reclamation Dist. No. 556,* 121 Cal. 96, [53 Pac. 401]; *People* v. *Levee Dist. No. 6,* 131 Cal. 30, [63 Pac. 676]; *Reclamation Dist. No. 551* v. *County of Sacramento,* 134 Cal. 477, [66 Pac. 668]; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, [103 Pac. 207]; *Reclamation Dist.* v. *Birks,* 159 Cal. 237, [113 Pac.

170].) The question thus calling for determination may be thus stated: Because the constitution does in terms and by name relieve the operative properties of these public service corporations from taxation by counties and municipalities, and does not in the sentence so doing in terms relieve them from taxes which might be imposed by districts, may such districts tax those operative properties? A satisfactory answer to this question cannot be found from a mere dissection of this single sentence of the constitution. There is involved in its proper determination a consideration of the scope and meaning of the whole constitutional provision.

Of the purpose of the framers of this new taxation measure, and of the intent of the people in adopting it, there is fortunately not the slightest doubt. The state had appointed a learned commission on revenue and taxation, whose labors extended over many years. In 1906 they promulgated their first report. In 1910 they put forth their second report. These reports were most widely distributed, at the state's expense, with the avowed purpose of educating its people to a knowledge of the reasons why the change in the method of taxation of public service corporations, banks, insurance companies, etc., was deemed most desirable, and to an understanding of the benefits which would follow the adoption of the new method. Those reports themselves are official publications of the state. (Appendix to Journals of Senate and Assembly, 39th sess., 1911, vol. 1.) Some of the reasons for the change have been expressed by this court in *Pacific Gas & Elec. Co.* v. *Roberts,* 168 Cal. 420, [143 Pac. 700]. Another and potent reason as set forth in the reports was the injustice of permitting local assessments for local ends upon properties such as railway companies and banks acting under corporate franchises and to whose prosperity the whole state contributed. Illustrations were given showing the injustice of permitting a poor county, contributing little or nothing to the support of a railway, but through whose territory a railway chanced to run, to tax locally the properties of the railway, while an adjoining county, rich and prosperous, and contributing enormously to the maintenance and support of the road, could, because the railroad did not reach into the county, receive no dollar of revenue. The same argument was applied to banks, and the demand was for a "separation of sources of taxation," and a constitutional provision au-

thorizing the state and the state alone to tax such corpora-
tions, while "the counties and local governments shall tax
only the private or individual real estate and tangible prop-
erty within their boundaries, property, that is, which is
clearly and distinctly localized." Herein it was pointed out
that corporate properties were broadly differentiated from
such local properties, in that the former "does not have in
the same sense a local situs. It extends over many communi-
ties, serves all, and all contribute to its income." "Obviously
there is a·perfectly clear line of demarkation between prop-
erty local in character, which would be subject to local taxa-
tion, and property or industries general in character which
should be subject to general or state taxation. To accomplish
separation it is necessary to define clearly and sharply the
boundary line between state and local powers of taxation."
"If we have separation of sources the state alone would deal
with these corporations. This would save a great amount of
friction and more or less expense." These quotations are
from the reports of the commission on revenue and taxation,
and could be indefinitely multiplied. Sufficient we think has
been said to show that the commission at least contemplated
and proposed for purposes of taxation a complete separation
of the taxing power, conferring upon the state the exclusive
power to tax all of the properties of all these corporations
by a tax substituted and commutated for the different *ad
valorem* taxes, this tax taking the form of a recovery into
the state treasury of a percentage fixed by law and change-
able at the will of the legislature of the gross revenues of
these corporations, while the corporate agencies and manda-
tories of the state were forbidden to levy local taxes upon the
operative properties of these corporations. In view of this
and of what will hereafter be said, we think the argument to
be of little weight that this constitutional amendment, while
deliberately framed to forbid local taxation upon the part of
counties and municipalities, with equal deliberation designed
that such local taxation could be imposed by districts, this
argument resting for its sole weight upon the omission of the
word "district" in the inhibiting clause, for we not only
find the learned commissioners speaking in their reports in-
differently of taxation by cities or taxation by counties or.
"local taxation," but we find in every word of their reports
that their fundamental idea was that the state, and the state

alone, should fully tax for its own purposes by this new method all of the properties of the corporations, which properties, as a matter of justice to avoid double taxation, as a matter of expediency to avoid waste, and as a matter of public policy to take away from these corporations all temptation to enter politics, should be absolutely relieved from "local taxation." This is not only the manifest design of the commission; it represents not alone the educational doctrines declared to the people, but when the constitutional amendment is read as a whole it is found clearly expressed therein.

It would appear to be beyond peradventure, therefore, that when the constitution declared that the state taxes "shall be in lieu of all other taxes, state, county and municipal" it used the words "state, county and municipal" as inclusive and descriptive, and not as designed to exempt districts from its operation and to authorize the levying of local taxes by such districts. (2 Lewis' Sutherland on Statutory Construction, sec. 495; *Church of the Holy Trinity* v. *United States,* 143 U. S. 457, [36 L. Ed. 226, 12 Sup. Ct. Rep. 511].) And this conclusion is strongly confirmed when consideration is paid to this constitutional amendment as a whole rather than to this single, detached sentence from it. Subdivision (e) of section 14, as above quoted, in terms declares that the operative properties of such corporations as appellant shall be subject to taxation "to pay the principal and interest of any bonded indebtedness created and outstanding by any . . . district before the adoption of this section." Here is an express authorization to levy a specific tax for a single specific purpose, and under the rules of construction too familiar to require the support of authorities, in view of the whole scope of the act it is too plain for argument that the express grant of power to levy a specific tax for a specific purpose embraces within it the implied denial of the right to levy any such tax for any other purpose. And finally, there is the provision above quoted (Const., art. XIII, sec. 14, subd. f), for the reimbursement of districts for tax losses sustained by the withdrawal of such corporate properties from local taxation; a loss they could not sustain under respondents' view. Therefore it is concluded that both on the report of the commissioners, and on the language of the constitutional amendment, the only form of local tax which may be levied and collected "by any city, city and county, county, town, township or dis-

trict" is that tax levied to pay the principal and interest of a bonded indebtedness created and outstanding at the time the constitutional amendment went into effect.

Of persuasive, though not of controlling, value to the consideration, is the contemporaneous act of the legislature, upon which is enjoined by the provisions of the constitution itself the duty "to pass all laws necessary to carry this section into effect." We will not unnecessarily prolong this discussion by quoting from the legislative acts. It is enough to refer to them. By a reading of them it is made plainly to appear that the legislature itself dealt expressly with districts and construed the constitution to forbid local taxation by such districts saving in the one instance authorized by the constitution itself. (Stats. 1911, c. 335, p. 530; Stats. of Special Sess. of Legislature, 1911, c. 23, p. 114; Stats. Regular Sess. of Legislature of 1911, c. 602, p. 1134; Stats. 1913, c. 6, p. 3, c. 320, p. 615, c. 533, p. 916.)

The conclusion thus reached and expressed is that the defendant district has not the general power to tax appellant's properties for its local purposes. The particular tax here under consideration, however, was admittedly levied under the constitutional sanction. In other words, it was a tax to pay the outstanding bonded indebtedness of the district. We next come, therefore, to the correlated rights and duties of these disputants under the admitted facts, which admitted facts for convenience may again be epitomized: The railroad company did pay, as it was called upon to pay, into the state treasury on the first Monday of July, the full four per cent of its gross revenues. The district tax at that time had not been assessed and levied. It was quite proper for the district to assess and levy this tax, because it was clearly within the contemplation of the constitutional provision that it should receive the amount of that tax either from the state by deduction from the total amount paid in by the railroad company, or from the railroad, which in turn would be entitled to reduce its total four per centum by the amount of the local tax which it had thus paid. Owing to the varying dates when these assessments became fixed and the taxes payable it was the duty of the appellant to pay in the full four per cent to the state as it did. At the time it did this it could not know and so could not withhold the amount of the district tax. Nor yet could it protest against its payment of

the full four per cent, since that payment was clearly contemplated by law and there was no legal ground of protest against it. The language of the constitution touching this matter is as follows: "The taxes so paid for principal and interest on such bonded indebtedness shall be deducted from the total amount paid in taxes for state purposes." In view of the erudition of the framers of this amendment, and of the study which they devoted to it, it is apparent that this language is most apt to meet just such cases as that here presented. It does not, as the controller argues, require that the corporations shall first deduct the amounts of these local taxes and pay only the balance after such deduction into the state treasury at the risk of forfeiture of the amount of the local tax, under the plea that the total state tax was voluntarily paid. Nor yet does it countenance for a moment the double taxation which would result if the state was paid the tax in full and the district in turn was paid its tax in full. Thus the language does not say that "the taxes so paid for principal and interest shall be deducted from the total amount *to be* paid in taxes for state purposes." It says that the deduction shall be made from the total amount *paid* in taxes for state purposes. If we are to give to this language the rigid construction for which the controller seems to contend, then if the constitution had meant that it should be compulsory upon the corporations themselves to deduct the amount of the local tax and pay only the balance into the state treasury, it would certainly so have said, by employing the phrase ":to be paid" instead of the word "paid." It is the reasonable construction of this sentence that "the taxes so paid for principal and interest" means both that if paid to the district they may be deducted from the total amount to be paid to the state, or if *paid* to the state the state shall deduct "from the total amount paid in taxes for state purposes" the amount due to the district and make that amount over to the district.

Such should have been the course adopted by the controller after the amount of the district tax was legally fixed and payable and demand had been made upon him for the payment of the same, out of the "total amount paid in taxes for state purposes" by appellant. The controller's refusal so to do was the initial error. Upon his refusal the district turned to appellant and exacted from it a double payment

under protest. Appellant then is clearly entitled to its recovery.

It has been agreed by the parties that if this court shall reach the conclusion that appellant is entitled to its recovery, it may order a direct recovery from the controller. We need not therefore pause to consider with more particularity the form of the judgment.

The application of appellant for injunctive relief, after what already has been said, calls for but brief consideration. It is clearly within the power of the district to levy this tax for the purpose of ascertaining the proportion of the bonded indebtedness and interest which the property of appellant should bear and pay, and no injunction therefore should be granted to prevent the district from so doing. Upon the other hand, it is not to be anticipated that any difficulty will be experienced in the future in the matter of the payments to such districts where the conditions here present exist, namely, where the time for the payment of the state tax antedates the assessment and levy of the district tax. No force inheres in the controller's objection that the legislature has not provided adequate machinery justifying him in paying to such districts the amounts of their taxes. The constitutional amendment itself declares that "all the provisions of this section shall be self-executing." And if there be a lack of machinery in other respects, the controller will be amply protected, in the payment of these moneys, by proper vouchers showing the payment thereof, and by proper entries in his books disclosing the nature and amount of the disbursements.

It is ordered therefore that the judgment appealed from be and hereby is reversed, and in conformity with the agreement of the parties it is further ordered that the superior court enter its judgment of award in favor of the appellant and against the respondent controller for the amount sued for.

Lorigan, J., Lawlor, J., Melvin, J., Sloss, J., Shaw, J., and Angellotti, C. J., concurred.

[L. A. No. 4209.   In Bank.—March 18, 1916.]

# H. G. BITTLESTON LAW AND COLLECTION AGENCY (a Corporation), Respondent, v. GERTRUDE C. HOW-ARD, Appellant.

PRACTICE—VERIFICATION OF COMPLAINT—FACTS WITHIN KNOWLEDGE OF AFFIANT — VERIFICATION BY ASSIGNOR OF CORPORATION. — An affidavit of verification to a complaint, made by the assignor of the corporate plaintiff, which sets forth that the affiant "is the assignor of the plaintiff in the above-entitled action, and, for that reason, is better informed as to the facts thereof than said plaintiff; that he has read the foregoing complaint and knows the contents thereof, and that the same is true of his own knowledge, except as to matters which are therein stated on information and belief, and as to those matters that he believes it to be true," fully meets the provision of section 446 of the Code of Civil Procedure, allowing a person not a party to verify where the facts are within his knowledge, when the complaint contains no averments on information and belief. (Silcox v. Long, 78 Cal. 118, overruled.)

ID.—REASONS WHY VERIFICATION NOT MADE BY PARTY.—Such affidavit contains a sufficient statement of the reasons why it was not made by one of the parties.

ID. — CORPORATION AS PLAINTIFF — OFFICER NEED NOT VERIFY. — The clause in section 446 providing for verification of a pleading by an officer when the corporation is a party is not exclusive. It is permissive only, and does not exclude an attorney or other person from making the verification in a proper case.

ID.—FILING UNVERIFIED ANSWER—JUDGMENT ON PLEADINGS.—Where an unverified answer is filed to a verified complaint, a motion for judgment on the pleadings is proper, without a preliminary motion to strike the answer from the files.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John M. York, Judge.

The facts are stated in the opinion of the court.

Charles J. Kelly, for Appellant.

Gray & Bittleston, and Cook, Gray & Bittleston, for Respondent.

LAWLOR, J.—This is an action brought by the plaintiff corporation against the defendant for an alleged breach of

two agreements in writing whereby the defendant employed
R. W. Kinsey, the plaintiff's assignor, as her agent, for the
purpose of securing certain loans on real property in the
county of Los Angeles, and for the securing of which loans
she agreed to pay the said R. W. Kinsey commissions amount-
ing to $342. The said agreements are set forth in two counts
in the amended complaint, which purports to be verified by
the said R. W. Kinsey. A demurrer was interposed by the
defendant to the amended complaint and overruled, where-
upon the defendant served and filed an unverified answer in
the form of a general denial. The plaintiff moved the court
for judgment on the pleadings on the ground that the unveri-
fied answer to the verified complaint constituted no defense
to the cause of action or any portion thereof. The motion
was granted and judgment was entered on the pleadings as
prayed for. Defendant appeals.

The sole question presented is whether the amended com-
plaint was properly verified. It is contended, "that the affi-
davit of verification to the complaint herein and relied upon
by the plaintiff upon such motion, is not such an affidavit
as to make the complaint a verified pleading within the pro-
visions of section 446 of the Code of Civil Procedure, and
was therefore an unverified complaint to which an unverified
answer and a general denial is permitted (Code Civ. Proc.,
sec. 437)." "In this case," says the appellant, "although
the affidavit is made by a person who is not a party to the
action, it does not state that the facts are 'within the knowl-
edge' of the person verifying, nor does the affidavit set forth
the reasons why it is not made by the party."

The affidavit is not open to either of these objections.

Section 446 of the Code of Civil Procedure provides:
"Every pleading must be subscribed by the party or his at-
torney. . . . In all cases of a verification of a pleading, the
affidavit of the party must state that the same is true of his
own knowledge, except as to the matters which are herein
stated on his information or belief, and as to those matters
that he believes it to be true, and where a pleading is veri-
fied, it must be by the affidavit of a party, unless the parties
are absent from the county where the attorney has his office,
or from some cause unable to verify it, or the facts are within
the knowledge of his attorney or other person verifying the
same. When the pleading is verified by the attorney, or any

other person except one of the parties, he must set forth in the affidavit the reasons why it is not made by one of the parties. When a corporation is a party, the verification may be made by any officer thereof. . . . '' The affidavit of verification is as follows: