[Civ. No. 48. Fourth Appellate District.—February 3, 1930.]

SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation), Appellant, v. C. R. STIBBENS, as County Tax Collector; etc., Respondent.

W. I. Gilbert and Henry W. Hobbs for Appellant.

Albert Ford, District Attorney, and Thomas C. Yager for Respondent.

Everett W. Mattoon, County Counsel, and W. Sumner Holbrook, Jr., Deputy County Counsel, *Amici Curiae.*

MARKS, J.—The appellant is a railway corporation owning a right of way over which it operates freight and passenger trains as a common carrier from the city of Los Angeles easterly through portions of Los Angeles, Riverside and Imperial Counties in the state of California to Yuma, in the state of Arizona, and points east. Respondent is county tax collector of Riverside County, and, as such, took steps to sell the land composing 45.626 miles of appellant's main line roadbed, 165 feet in width, in Riverside County, because of an unpaid assessment levied for the benefit of the Coachella Valley Storm Water District. The assessment here involved was levied in the year 1921 in the amount of $3,193.68. Subsequent assessments, with charges, penalties and interest brought the total levy against appellant's right of way to the sum of $20,924.32 on April 30, 1927, no part of which has been paid. After the lapse of a period of five years respondent was proceeding to publish notice and offer for sale to the highest bidder the lands assessed. Appellant secured a temporary restraining order against the proposed sale. At the trial of the action judgment was rendered in favor of respondent and this appeal was taken.

The Coachella Valley Storm Water District is a storm water protection district duly organized and existing under the Storm Water District Act of 1909, being act of March 12, 1909 (Stats. 1909, p. 339), as amended. The district lies within the county of Riverside and is crossed by the land composing the right of way of appellant. This district was organized some time prior to 1921, and at that time had issued, sold and had outstanding bonds to the amount of $300,000, which sum was to be used in the construction of various works for the protection of lands, within the boundaries of the district, from the storm waters of the Whitewater River, an unnavigable stream, and from the storm waters from numerous canyons and washes, all within the boundaries of the district.

This case was originally appealed to the Supreme Court and has been transferred to this court for decision. The Supreme Court permitted the county counsel of Los An-

geles County and his deputy to appear and file a brief herein as *amici curiae* on behalf of several local improvement districts in that county which will be directly affected by the decision in this case, there being over 800 miles of land used as rights of way by various railroads assessed in these districts.

The case has been ably and clearly briefed by the various counsel appearing herein, and in the last analysis the controlling issues have been reduced to two. Appellant maintains that the judgment cannot be affirmed because: First, the general revenue laws of California do not confer upon the county assessor of Riverside County the authority to assess and value the land composing the right of way of an intercounty railroad assessed by the state board of equalization, neither do the provisions of the Storm Water District Act confer such authority, and, therefore, that this attempted exercise of such power is without effect, and is invalid; and, second, that public policy forbids the dismemberment of railroads in enforcement of local improvement assessments. To the first contention of appellant may be added his secondary contention, that, as the land used as its right of way did not appear upon the regular assessment-roll of the county, the assessor had neither the authority to enter this land upon the assessment-roll nor the authority to place any value upon it, nor the authority to perform any other duty under the act; and that, therefore, the assessment levied could not become a lien upon the land in question here, but only upon lands within the district regularly upon the assessment-rolls of the county placed there by the assessor in the performance of his usual duties. However, it does not appear from the record that the assessor did place any value upon the land of appellant, speaking now in terms of the common usage of valuing land for assessment purposes.

We have been cited to no case construing the Storm Water District Act of 1909, so we will have to look to decisions upon somewhat similar acts to assist us in our conclusions in this case. Appellant admits that the assessment levied in this case was not a tax and that it was properly levied and constituted a legal lien upon its operative lands other than the land used as its right of way in question. It is admitted by the respondent that the land assessed and in-

volved in this action was assessed by the state board of equalization for the purposes of state taxation, and was not assessed by the county assessor of Riverside County for the purposes of general taxation for county purposes, and should not have appeared upon such assessment-roll for the purpose of local assessment of the district unless the assessor was authorized to place it there under authority of the Storm Water District Act of 1909 and of section 3650 of the Political Code.

We will consider the two grounds upon which appellant seeks a reversal of the judgment of the court below in the order in which we have stated them, namely, first, the authority of the assessor of Riverside County to place the property involved, together with the assessment against it, on the assessment-roll, and, second, the question of public policy involved in the sale of a portion of the land used by a railroad company doing an intercounty and interstate business.

Respondent and *amici curiae* rest their case in reply to appellant's first argument upon two grounds, namely, first, that while section 3628 of the Political Code requires the assessor each year to assess and place on the assessment-roll all taxable property within his county "except such as is required to be assessed by the State Board of Equalization," still the broad provisions of section 3650 of the Political Code were sufficient to enable him to place upon the assessment-roll a description of the property in question with the amount assessed against it, and, second, that if a tax or special assessment is imposed by statute the necessary machinery for its collection is implied.

While respondent urges with great force the argument that section 3650 of the Political Code directs the assessor to assess all taxable property within the county and place such assessment on his rolls, we do not desire to adopt this theory as the basis of this decision. The fact remains that under the provisions of section 3628 of the Political Code, the land in question here comes within the exception contained in that section which we have heretofore quoted, and is assessed by the state board of equalization, together with other operative property of railroad companies. The two sections of the code must be construed together, and we think amply justify the methods of assess-

ment of this class of property, in use for many years, to raise revenue for state purposes, and to retire bonds issued by counties, cities and other public agencies.

There is much more force in the argument of respondent and *amici curiae* that if a tax or special assessment is imposed by statute the necessary machinery for its collection is implied, though we think that this statement is entirely too broad to be a correct statement of the law and is not required by the facts of this case. They cite and rely upon the cases of *State* v. *Poulterer*, 16 Cal. 514, *Koontz* v. *Burgesses etc. of Hancock*, 64 Md. 134 [20 Atl. 1039], and *State ex rel. Southern Ry. Co.* v. *Talley et al.*, 50 S. C. 374 [27 S. E. 803]. These cases, to an extent, seem to support the contention of·counsel citing them. However, we seriously doubt the power to collect a tax imposed upon land without any machinery whatsoever being provided by law for its assessment and collection, but under the facts of this case such a condition is not presented. In this case we have all of the machinery provided by law for the collection of county taxes adopted by section 26e of the Storm Water District Act of 1909, for the collection of its assessments. The only question presented under this phase of the case is the right of the county assessor to place on the assessment-roll of the county the description of appellant's property involved, together with ·the amount assessed against it to pay its proportion of the cost of the improvements constructed by the district. If he had such authority, either express or implied, the assessment must be upheld, if not, it must fail. The machinery for making an assessment of lands in his county is elaborately set forth in the Political Code, so the question is not lack of machinery to make the assessment or to collect the same, but the right of the assessor to use a small portion of this machinery and put it in motion in this particular case. The authority is not directly given, so if it exists it must be implied.

The Storm Water District Act of 1909, as originally enacted provided for the organization of the district, the election of a board of trustees to govern its affairs and the appointment of employees to carry on the protection work. After organization, the board of trustees is empowered to have a survey of the district made in order to determine what improvements shall be constructed, and shall have

prepared plans and specifications of the improvements proposed. The board of trustees must appoint three commissioners to estimate the total cost of making these improvements, including all incidental expenses, and to assess the benefits and damages arising therefrom. The assessment, which is composed of the cost of the improvements, including any damages that may be awarded, "shall be made upon the lands in said district in proportion to the benefits to be derived by such lands from said improvements, including in said assessment the property of any railroad company within said district, if such there be." (Sec. 11, Storm Water District Act of 1909.) The word "property," as used in this quotation, must be held to refer to, and include only "land," as it is clear from the act that no property other than land is to be assessed under its terms. The commissioners must file their detailed report with the board of trustees. The act provides for a notice of hearing of the report, objections and a hearing of the same, if any, the rejection or correction of the report or assessment, and the confirmation of the same, or of an amended or corrected report. After the adoption of the report the board of trustees may, if the assessment be too great to be paid in one year, extend the payments in equal installments over a period of years not exceeding ten. Certified copies of the necessary portions of the proceedings are then to be filed with the county tax collector and the assessments spread upon the tax-rolls of the county, after which they become liens upon the land assessed and are to be collected by the tax collector. Provision was also made for an annual assessment to provide money for the current year for defraying the ordinary expenses of the district and maintaining and repairing the works and improvements thereof. The levy of an assessment for these purposes does not seem to be involved in this case. In 1917 the legislature added to the act, provisions authorizing the district to issue bonds to pay the costs of the improvements (Stats. 1917, p. 218). This formed an alternative method for the raising of money to pay the cost of improvements within the district. The deferred assessment plan we have outlined was left in full force and effect. It will be observed that the bonds, if the bond plan be adopted, are in lieu of the plan of spreading the payment and collection of the assessments

over a period of years, and do not affect the prior pro-
ceedings. Under the bond plan the board of trustees of
the district is required annually to estimate the amount of
money necessary to pay the principal and interest on the
bonds accruing each year and certify such amount to the
board of supervisors of the county, who shall levy an assess-
ment on the lands in the district sufficient to raise the
money. "Said tax, when levied, shall be entered upon
the assessment roll and collected in the same manner as the
state and county taxes." (Stats. 1917, p. 220.) In the
case before us the estimate was made by the board of trus-
tees and submitted to the board of supervisors, which levied
a tax of $1.40 on each $100 valuation on the land assessed
within the district. The county assessor entered the assess-
ment on the roll for the year 1921–1922 and succeeding
years, during which the same proceedings were seemingly
taken. The agreed statement of facts in the record and
the findings of fact of the trial court contain the following
recital in this connection: "That in the year 1921, the
county assessor of Riverside County entered upon the oper-
ative rolls the following assessments of the right of way of
the Southern Pacific Railroad Company," followed by a
description of the various parcels of the land assessed with
the charges against them. The board of supervisors fixed
the rate to be paid on the assessment upon the lands within
the district, and the county auditor computed the amounts
of the several collections to be made for the year.

The amounts of the assessments, and the fairness of the
amounts charged against its lands, are not questioned by
appellant, but only the fact that the entries were made by
the assessor. ▮ It must be admitted that it might have
been better practice to have had prepared at the time the
original report was submitted by the board of trustees of
the district to the board of supervisors under section 16
of the Storm Water District Act of 1909, a permanent rec-
ord in which the descriptions of the lands to be assessed,
together with the amounts of the assessments, might be en-
tered with extensions for the entry of the various annual in-
stallments during the life of the bonds, which would have
left nothing to be entered except the annual computations
of the installments to become due. Because this was not
done, and because the assessor seemingly made up a new

assessment-roll each year, must the assessments fail? The transcription of the roll was only a manual act, and we cannot see why the writing up of a new roll each year should give appellant cause for complaint if the assessor had the implied authority to do this work. It would seem to us to make no difference in principle whether the assessments were entered in one continuous roll, or were separately entered. This is a question of form and not of substance affecting the rights of the land owners.

It is very evident from the terms of the Storm Water District Act of 1909, both in its original form and as amended, that the legislature intended to place the burdens of the cost of the improvements upon the lands within the district that were benefited by them. That none of the lands benefited should escape, is very evident, and especial mention is made of lands belonging to railroad companies.

In construing a statute it is a duty of the courts to construe it and to view it "in the light of every presumption and intendment favoring its constitutionality" (*Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028, 1030]), so that it may be vitalized and given life and full force and effect. (Sec. 3541, Civ. Code; *Kydd* v. *San Francisco,* 37 Cal. App. 598 [174 Pac. 88]; *Hunt* v. *Manning,* 24 Cal. App. 44 [140 Pac. 39]; *Glassell Development Co.* v. *Citizens Nat. Bank,* 191 Cal. 375 [28 A. L. R. 1427, 216 Pac. 1012].) If we should hold that some officer did not have the authority, either express or implied, to enter upon an assessment-roll the lands of appellant with the amounts assessed so that they would thereby escape the payment of their share of the cost of the improvements made in the district, grave doubts would immediately arise as to the constitutionality of the entire act, and others under which similar modes of assessment were adopted. Such a construction might furnish the avenue of escape from the assessment of large tracts of land benefited by the improvements. This is a result that should be avoided if it can be done without doing violence to the established principles of law in this state.

Under the broad provisions of the law of California the assessor of a county is given the duty, and upon him rests the burden, of assessing all taxable property within his county, with certain definite exceptions, for the

purpose of the levy and collection of taxes for county purposes. The right is given him to assess all taxable property, but this right, together with the duty following, is suspended by other sections of the Political Code, where the assessment is made by certain officials of the state. Operative property of public service corporations has not been exempted from taxation by the terms of the Constitution (Const., art. XIII, sec. 14), but rather a substituted form of assessment and collection of taxes was adopted. In the case of *McHenry* v. *Alford,* 168 U. S. 651 [42 L. Ed. 614, 18 Sup. Ct. Rep. 242], in discussing similar methods of levy and collection of taxes for state purposes to those adopted by the constitutional amendment, the following apt language was used: "When it is said, as it is in this act, that the tax collected by this method shall be in lieu of all other taxes whatever, it would seem that it might be claimed with great plausibility that a tax levied under such circumstances and by such methods was not in reality a tax upon gross earnings, but was a tax upon the lands and other property of the company, and that the method adopted of arriving at the sum which the company should pay as taxes upon its property was by taking a percentage of its gross earnings." (*San Francisco* v. *Pacific Tel. & Tel. Co.,* 166 Cal. 244 [135 Pac. 971]; *Pacific Gas & Electric Co.* v. *Roberts,* 168 Cal. 420 [143 Pac. 700]; *Southern Pac. Co.* v. *Levee Dist. No. 1,* 172 Cal. 345 [156 Pac. 502].) In fact, instead of exempting operative property from taxation, it affirmatively appears from the Constitution that the legislature might, under proper circumstances, resort to an *ad valorem* tax upon this and other property to furnish revenue for state purposes. (Const., art. XIII, sec. 14, subd. e.) It must also be borne in mind that in the case before us we are not dealing with a tax, but with a local benefit assessment to pay the cost of local improvements within the district organized under the Storm Water District Act of 1909.

Bearing in mind that an assessor is given the broad duty of assessing the property within his county subject to taxation for county purposes, and that it is clear that the legislature intended that the property of appellant involved in this action be assessed to pay its just share of the costs of

the improvements within the district, and bearing in mind further that the amendments of 1917 to the Storm Water District Act of 1909 contained no direct mandate to enter the description of this property, together with the assessment upon it, on the tax-rolls of Riverside County, we must proceed to the question of whether or not the respondent had the implied power to make the entries that he did in his records. While we have not been referred to, nor have we found a case directly in point, there are, however, many cases construing the implied powers granted to officers and boards within the state that furnish us with the general principles to be applied here. In the case of *Laurelle* v. *Bush*, 17 Cal. App. 409 [119 Pac. 953, 956], the following language was used: "It is a well-recognized rule of statutory construction that a general grant of power, unaccompanied by specific directions as to the manner in which the power is to be exercised, implies the right and duty to adopt and employ such means and methods as may be reasonably necessary to a proper exercise of the power. (2 Lewis' Sutherland on Statutory Construction, sec. . 508; *DuPage Co.* v. *Jenks*, 65 Ill. 275; *Ex parte McManus*, 151 Cal. 331 [90 Pac. 702].)" In the case of *Watt* v. *Smith*, 89 Cal. 602 [26 Pac. 1071, 1072], the Supreme Court spoke as follows: "Authorities may be found to the effect that all public officers have an implied power to take all legal measures in their official character which may be requisite to enable them to execute the trust or discharge the duty imposed upon them by law, where there is no statute prescribing the means by which such trust shall be executed. And, therefore, if to accomplish their official duty or to discharge their trust it is found necessary to sue, power to do so is implied. (*Cornell* v. *Town of Guilford*, 1 Denio (N. Y.), 510, and authorities cited.) This seems a rational conclusion, and logically follows from the fact of the trust or duty imposed, which can be performed in no other way." Again, in the case of *Lewis* v. *Colgan*, 115 Cal. 529 [47 Pac. 357], in discussing implied power from a different angle, the following language was used: "The principle recognized in that case, and applied in the decision, is stated in Throop on Public Officers, section 542, as follows: 'The rule respecting such powers is, that in addition to the powers expressly given by statute to an officer

or a board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the powers' This statement of the doctrine is abundantly sustained by the decided cases everywhere, and is so universal and undisputed that we deem it unnecessary to cite authorities.'' The cases of *Willmon* v. *Powell,* 91 Cal. App. 1 [266 Pac. 1029], *Skidmore* v. *West,* 186 Cal. 212 [199 Pac. 497], *Haley & Co.* v. *McVay,* 70 Cal. App. 438 [233 Pac. 409], *Harter* v. *Barkley,* 158 Cal. 742 [112 Pac. 556], *City of Woodland* v. *Leech,* 20 Cal. App. 15 [127 Pac. 1040], and the numerous cases cited in these decisions furnish other apt illustrations of rulings on the question of implied powers.

The act of the legislature creating the Los Angeles County Flood Control District (Stats. 1915, p. 1502) contains many provisions as to the assessment of the lands of the district similar to the Storm Water District Act of 1909. The same questions which we are considering under the Storm Water District Act of 1909 were considered and passed upon under the Los Angeles Flood Control District Act in the case of *Los Angeles Ry. Corp.* v. *Los Angeles County Flood Control Dist.,* 78 Cal. App. 173 [248 Pac. 532]. With the similar provisions of the two acts in mind the opinion of Mr. Justice Nourse in this case is particularly helpful. In passing upon the point we are considering it was held as follows: ''It is unnecessary to cite authorities to the rule that when a statute is general in its terms any exemption or exception from its operation must be specific. Thus when the legislature declared that the tax should be levied upon all the taxable real property in the district it included every class of real property in the district which was not by the Constitution or statute expressly exempted from that character of taxation. Now the operative real property of the public utilities within the district, though exempt under section 14 of article XIII from general taxation by the district, but not being expressly exempted from local assessments, comes within the general classification of 'taxable real property' and as such is subject to the assessments for the purpose of this act. This conclusion follows all the more naturally because it is a matter of common knowledge that the purposes of the act were to protect

from damage the public highways and other property in the district and that the demand for its enactment resulted from the great loss to property from destructive floods which had, for a long period of years, interrupted traffic within the district, washed away railroad bridges and damaged railroad tracks and rights of way and had caused enormous damage to the property owned by the various public utilities operating in the district. Counsel for the Los Angeles Gas and Electric Corporation, a public utility owning operative property in the Flood Control District, have filed a brief as '*amici curiae*,' in which they advance the point that such property is not subject to taxation under the act because the only machinery provided in the act for the levy and collection of a tax is that provided for the levy and collection of the 'general tax levied for county purposes' from which the operative property of these utilities is exempted by section 14 of article XIII of the Constitution. The argument is that as this operative property is exempted from the county general taxes the fact that the Flood Control Act adopted the county tax machinery as the only method of levying and collecting the 'tax' for flood control purposes discloses an intention on the part of the legislature to exempt such operative property from the burden of the act. The answer to the point raised is a simple one and is found in the comprehensive opinion written by Mr. Justice Sloss in the Hamilton case, 177 Cal. 119, 128, 129 [169 Pac. 1028]. In that case it was held that though the word 'tax' was used throughout the act the legislature in fact meant an assessment and that, accordingly, all the 'taxing' provisions of the act were to be read as authorizing the imposition of a special assessment on the basis of benefits to the real property in the district. Reading the act in the light of this decision, we find that the power was conferred upon the supervisors to impose a special assessment upon all the real property in the district to pay the interest and principal on the bonds of the district, and, to a limited extent, to raise a special fund for the general purposes of the district. This power to assess goes to all the real property in the district. No real property in the district is expressly exempted, and we have seen that the operative real property of public utilities is not exempted from special assessment for benefits by reason of section 14 of article XIII

or of any other provision of the Constitution. This, in fact, is conceded by the appellant, as indeed it must under the decisions. (*Southern Pac. Co.* v. *Levee Dist. No. 1*, 172 Cal. 345, 349 [156 Pac. 502]; *Los Angeles Co. F. C. Dist.* v. *Hamilton, supra.*) ''

As far as the particular entry on the assessment-roll by the assessor of Riverside County of the lands of appellant goes, much the same situation arose in so far as the assessor was concerned, as when property in a new form comes into existence and must be assessed. Not so many years ago there were no motor vehicles to be assessed. Later the radio, the airplane and other new forms of personal property came into being, and all were assessed. ▮ When the inventive mind of man has produced property in a new form no one could question, not only the right, but the duty of the assessor to enter it upon the assessment-roll so that it may bear its just portion of the cost of government. When the inventive mind of the legislature finds a new class of property upon which it directs shall rest a portion of the burden of a public improvement, we do not believe that the implied power of the assessor to so complete his assessment-rolls that this property shall not escape an assessment to pay its just proportion of the benefit it receives, should be questioned. ▮ No other means of collecting the assessment is provided by law (*Atchison, Topeka & Santa Fe Ry. Co.* v. *Reclamation Dist. No. 404*, 173 Cal. 91 [159 Pac. 430]), and, therefore, we hold that the assessor had the implied power and authority to enter upon the rolls of Riverside County the assessment complained of by appellant in this case. ▮ The duties of a public officer include, not only those which lie within the direct definition of the statute, but also those which are necessary to the accomplishment of the purpose of his office, even though they may be an incident of his main duties, where they promote the execution of a mandate of law.

What is, or what is not, against public policy is a question upon which courts in various jurisdictions do not always agree. ''Some courts, speaking upon this subject, have said that the immediate representatives of the people, in legislature assembled, would seem to be the fairest exponents of what public policy requires, as being most familiar with the habits and fashions of the day, and with

the actual condition of commerce and trade, their consequent wants and weaknesses, and what legislation is least objectionable, because it operates prospectively, as a guide in future negotiations, and does not, like a judgment of the court, annul a contract already concluded. There can be no doubt that primarily it is the prerogative of the legislature to declare what contracts and acts are contrary to public policy, and to forbid them; hence public policy is what a statute enacts. Therefore it is the duty of the judiciary to refuse to sustain that which is against the public policy of the state, when such public policy is manifested by the legislation or fundamental law of the state. Nor can courts declare contracts or acts authorized by statute to be contrary to public policy; but in the absence of a statute they may declare void, as against public policy, contracts which are clearly injurious to the interests of the public." (6 R. C. L., p. 709.) This rule seems to have been adopted in California in the case of *Lux* v. *Haggin*, 69 Cal. 255 [4 Pac. 919, 10 Pac. 674, 702], in which it was held as follows: "The policy of the state is not created by the judicial department although the judicial department may be called upon at times to declare it; it can be ascertained only by reference to the Constitution and laws passed under it, or, which is the same thing, to the principles underlying and recognized by the Constitution and laws." The recent case of *Maryland Casualty Co.* v. *Fidelity Casualty Co.*, 71 Cal. App. 492 [236 Pac. 210, 212], has enlarged upon but not departed from this rule. In this case the court said: "An exact definition of public policy would be difficult to formulate. One that has been frequently approved is that adopted by Lord Brougham, namely, that no one can lawfully do anything which has a tendency to be injurious to public welfare. The application of the principle to a given state of facts is not always easy though it admits of some degree of latitude. Public policy often changes as the law changes. It is manifest, therefore, that there can be no single or fixed standard governing it. The question, what is public policy in a given case, is as broad as the question of what is fraud. It is primarily the prerogative of the legislature to declare what contracts and acts shall be unlawful; but courts, following the spirit and genius of the law, written and unwritten, of a state, may declare void as against public policy

contracts which, though not in terms specifically forbidden by legislation, are clearly injurious to the interests of society. When the fact is called to the attention of a court that a contract sought to be enforced is illegal it will refuse the plaintiff any relief and will generally leave the parties where it finds them. In determining what is public policy in a given jurisdiction recourse may be had not only to enacted law but also to the decisions of the courts of last resort. In considering this question many courts have cautioned against recklessness in condemning contracts as being against public policy. Thus it has been said by an English judge that public policy is an unruly horse astride of which one may be carried into unknown paths. A similar caution is one to the effect that before a court refuses to recognize a contract which is made in good faith and which stipulates for nothing which is *malum in se* or *malum prohibitum* it should be satisfied that the advantage to accrue to the public from its holding is certain and substantial, not theoretical or problematical, and based upon certain economic or sociological problems. The power to invalidate agreements on the ground of public policy is so far-reaching and so easily abused that it should be called into action only in cases where the dangerous tendency clearly and unequivocally appears from the contract itself. Courts are reluctant, therefore, to declare a contract void as against public policy, and will refuse to do so if by any reasonable construction it may be upheld." Again: "As said by Chase, C. J., in the *License Tax Cases*, 5 Wall. 469 [18 L. Ed. 497]: 'this court can know nothing of public policy except from the Constitution and the laws, and the course of administration and decision.' The policy of the state 'can be ascertained only by reference to the Constitution and laws passed under it, or, which is the same thing, to the principles underlying and recognized by the Constitution and laws.'" (*Alpers* v. *Hunt*, 86 Cal. 78 [21 Am. St. Rep. 17, 9 L. R. A. 483, 24 Pac. 846, 848].)

In the cases cited by appellant in support of its contention that public policy in California would not permit the dismemberment of a railroad doing an intercounty or an interstate business, the question of the declaration by the legislature upon such policy was not involved. The cases of *Southern California Ry. Co.* v. *Workman*, 146 Cal. 80 [2

Ann. Cas. 583, 82 Pac. 79], *Fox* v. *Workman*, 155 Cal. 201 [100 Pac. 246], and *Schaffer* v. *Smith*, 169 Cal. 764 [147 Pac. 976], were decided under the terms of the Vrooman Act. The case of *San Pedro etc. R. R. Co.* v. *Pillsbury*, 23 Cal. App. 675 [139 Pac. 669, 671], involved proceedings under the Local Improvement Act of 1901 (Stats. 1901, p. 34). The case of *Wilson* v. *Pacific Elec. Ry. Co.*, 176 Cal. 248 [168 Pac. 128], involved a proceeding under the Improvement Act of 1911, arising prior to the amendment of the street laws expressly authorizing the assessment of rights of way of railway companies. None of these cases involved a direction by the legislature to assess lands used by a railroad as part of its right of way to pay the cost of the improvement. In the case of *Wilson* v. *Pacific Elec. Ry. Co.*, *supra*, the court was particular to call attention to the fact that the assessment involved was levied prior to such an amendment to the street laws authorizing the assessment of such rights of way.

Section 16 of the Street Opening Act of 1903 (Stats. 1903, p. 376) provided that the cost of an improvement must be assessed "upon and against the lands, including the property of any railroad, within said assessment district." In the case of *Los Angeles Pac. Co.* v. *Hubbard*, 17 Cal. App. 646 [121 Pac. 306, 309], in construing this act, the court said that "we perceive no constitutional objection to an act of the legislature providing for the assessment of all or a part of the right of way, whether owned in fee by the railroad, or consisting merely of an easement, to cover benefits received as a result of the widening of a street; and, since the words inserted in the act constitute express authority and direction to the street superintendent to assess the property of railroads or street railroads within the district, and inasmuch as all land other than rights of way in the district owned by a railroad is clearly subject to assessment under the general language used, it must have been the intent of the legislature to provide for the assessing of such rights of way, whether the same consisted of an easement or title in fee, where the property would be benefited by the widening of the street. We are, therefore, of the opinion that the right of plaintiff to the use of the street for the purposes specified in the grant of its franchise constituted a

piece or parcel of land within the meaning of the term as used in the Street Opening Act of 1903, and that such property was subject to assessments for benefits accruing to it by reason of the opening of the street.'' In the case of *Los Angeles Ry. Corp.* v. *Los Angeles County Flood Control Dist., supra,* the question of public policy was presented in connection with the assessment of the land used as a right of way by a street railroad operating within the district and within Los Angeles County. The court held that inasmuch as the legislature had directed the assessment of all land within the district, it had declared the public policy of the state to be to permit such assessments, as the word ''land'' certainly included railroad land used as a right of way. The Los Angeles Flood Control Act contained no specific direction to assess the lands of railroad companies.

In the case before us, section 11 of the Storm Water District Act of 1909 contains an explicit direction that with the lands to be assessed to pay the costs of the improvements shall be included ''the property of any railroad company within said district.'' We believe that when the legislature directed the assessment of any land belonging to a railroad company within the district it intended that the assessment should be paid or collected according to law. In this case the only way to collect a delinquent assessment is by sale of the lands. (*Atchison, Topeka & Santa Fe Ry. Co.* v. *Reclamation Dist. No. 404, supra.*) We believe the legislature did not intend to direct the making of a useless assessment and that it has determined the public policy of California to be that lands used as a railroad right of way may be sold to pay a delinquent assessment lawfully levied under the provisions of the Storm Water District Act of 1909.

Appellant further complains of the assessment levied because it insists that it includes the franchise, roadway, roadbed, rails and rolling stock of the company. We do not so read the assessment in the record before us. The assessment is copied in full and shows only a strip of land 165 feet wide through various sections described, with an amount in money following each of the several parcels described. We cannot construe this to be an assessment on anything more than it shows. From all that appears in the records, the amounts entered are the benefits charged against the

lands described in the report of the commissioners and approved by the trustees of the district.

Appellant further complains of a ruling of the trial court refusing to strike out a portion of an agreed statement of facts used at the trial, to the effect that the railroad right of way was benefited by the protection works of the district. This ruling cannot be complained of by appellant in this action. The question of what property was benefited by the improvements was submitted to the board of supervisors of Riverside County during the proceedings leading up to the organization of the district. The findings and decision of the board of supervisors on this question cannot be collaterally attacked in this proceeding. The other questions presented by appellant are not material to the conclusions we have reached and do not need to be separately discussed in this opinion as we have assumed without deciding that its position on these exceptions and assignments of error was correct.

Judgment affirmed.

Sloane, P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 24, 1930, and a petition by appellant to have the cause heard in the Supreme Court after judgment in the District Court of Appeal, was denied by the Supreme Court on March 31, 1930.

All the Justices concurred.